UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE HERLEY INDUSTRIES INC. SECURITIES LITIGATION | No. 06-CV-2596 (JRS) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE THE REPORT AND TESTIMONY OF DEFENDANT'S EXPERT WITNESS ALBERT S. DANDRIDGE, III**

**KIRBY McINERNEY LLP**
Attorneys for Lead Plaintiff
Ira M. Press
Andrew M. McNeela
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 371 - 6600

## TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.      Mr. Dandridge's Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.      Mr. Dandridge's Deposition Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.      Courts Routinely Prohibit Parties From Offering Opinion Testimony
            On the Law Regarding Ultimate Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.      Mr. Dandridge's Opinions Are Inadmissible . . . . . . . . . . . . . . . . . . . . . . . . . 9

            1.      Mr. Dandridge's Expert Report and Testimony Consist
                  of Legal Opinions and Conclusions, Which This
                  Court Should Preclude in Their Entirety . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.      Mr. Dandridge's Opinions are Excludable on the Independent
                  Ground That They Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

**Cases**:

*Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir.1986),
    *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988) . . . . . . . . . . . . . 7, 10

*Allstate Prop. & Cas. Ins. Co. v. Vargas*,
    Civ. A. No. 9-3368 (LDD), 2008 WL 4104542 (E.D. Pa. Aug. 29, 2008) . . . . . . . . . . . 7

*Amalgamated Clothing & Textile Workers Union, AFL-CIO v. J.P. Stevens & Co., Inc.*,
    475 F. Supp. 328 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ballan v. Wilfred Am. Ed. Corp.*,
    720 F. Supp. 241 (E.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Berckeley Invest. Group, Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Burkhart v. Washington Metro. Area Transit Auth.*,
    112 F.3d 1207 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Casper v. SMG*,
    389 F. Supp. 2d 618 (D.N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Initial Pub. Offering Sec. Litig.*,
174 F. Supp. 2d 61 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Par Pharm. Sec. Litig.*,
    733 F. Supp. 668 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Loeb v. Hammond*,
    407 F.2d 779 (7th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Marx & Co., Inc. v. Diner's Club*,
    550 F.2d 505 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Montgommery v. Aetna Cas. & Sur. Co.*,
    898 F.2d 1537 (11th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mukhtar v. Cal. State Univ., Hayward*,
    299 F.3d 1053 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nieves-Villanueva v. Soto-Rivera*,
    133 F.3d 92 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Owen v. Kerr-McGee Corp.*,
    698 F.2d 236 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pelletier v. Main Street Textiles, LP*,
    470 F.3d 48 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Peterson v. City of Plymouth*,
    60 F.3d 469 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pharmacia Corp. v. Par Pharm., Inc.*,
    Civ. A. No. 01-6011 (SRC), 2004 WL 5614917 (D.N.J. Feb. 14, 2008) . . . . . . . . . . . . . 8

*Pinter v. Dahl*,
    486 U.S. 622 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Roeder v. Alpha Indus., Inc.*,
    814 F.2d 22 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

*Specht v. Jensen*,
    853 F.2d 805 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Stobie Creek Invs., LLC v. United States*,
    81 Fed. Cl. 358 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*The Pinal Creek Group v. Newmont Mining Corp.*,
    352 F. Supp. 2d 1037 (D. Ariz. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*The Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*,
    No. Civ. A. 04-940 (JJF), 2006 WL 2241128 (D. Del. Aug. 4, 2006) . . . . . . . . . . 7, 8, 11

*Tigers Eye Trading, LLC v. Commissioner of Internal Revenue*,
    97 T.C.M. (CCH) 1622, 2009 WL 1475159 (U.S. Tax Ct. May 27, 2009) . . . . . . . . . . . 11

*United States v. Curtis*,
    782 F.2d 593 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Leo*,
    941 F.2d 181 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Vreeken*,
    803 F.2d 1085 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ward v. Westland Plastics, Inc.*,
    651 F.2d 1266 (9th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Rules**:

Fed. R. Civ. P. 16(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

Fed. R. Evid. 704(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Preliminary Statement**

Pursuant to Rule 16(c)(2) of the Federal Rules of Civil Procedure and Rules 402 and 702 of the Federal Rules of Evidence, lead plaintiff in the above-captioned matter respectfully moves for an order *in limine* excluding from evidence the August 14, 2009 Expert Report ("Report") (annexed as Exhibit A to the October 30, 2009 Declaration of Ira M. Press ("Press Dec.")) and testimony of defendants' proposed expert witness Albert S. Dandridge, III. Mr. Dandridge was engaged by Herley to opine on the reasonableness of counsel's alleged advice that Herley was not obligated to disclose the Government's investigation of Herley or the subject matter of the investigation, prior to the filing of an indictment.

In essence, however, the Report is nothing more than an impermissible legal opinion regarding the disclosure duties of publicly traded companies under the securities laws and regulations, dressed as expert opinion. Indeed, the Report – which is primarily devoted to identifying the purportedly applicable SEC regulations and examining case law interpreting those provisions – reads more like a memorandum of law than an expert opinion. Unsurprisingly, courts universally preclude such expert testimony as encroaching upon the court's authority to instruct the trier of fact on the legal principles applicable to an ultimate issue.

Moreover, even if Mr. Dandridge did not offer legal analysis as expert opinion – which he does – his Report and testimony should nonetheless be precluded as irrelevant. As a preliminary matter, plaintiffs have not challenged the alleged advice of Herley's counsel and have not named such counsel as a defendant. Additionally, despite asserting over 40 affirmative defenses, defendants have not raised reliance on the advice of counsel as a defense to this action. In any event, lost in the Report is any analysis of what plaintiffs actually claim: *Not* that Herley had an obligation to reveal the Government's investigation in a vacuum, *but that* Herley's public statements identifying the

Government as its single largest customer, touting its longstanding relationship with the Government as a business advantage, and stressing the importance of continued compliance with applicable contracting regulations, triggered an obligation to disclose that Herley was, at the same time, being criminally investigated for contracting fraud by its single largest client, the United States government.[1]

Accordingly, the Court should preclude Mr. Dandridge's Report and testimony from evidence.

**Factual Background**

A.  **Mr. Dandridge's Report**

According to the Report, Mr. Dandridge is a senior partner and Chairman of the Securities Practice Group of Schnader Harrison Segal & Lewis LLP. (*See* Press Dec. Ex. A, at 1). Mr. Dandridge was engaged by Herley to opine on the following two questions:

1.  Was the advice given to Herley Industries, Inc. ("the Company") by its attorneys that a corporation does not have a duty to disclose the existence of an investigation into possible criminal wrongdoing in its public filings with the SEC pursuant to the federal securities laws and the regulations promulgated thereunder until someone was charged reasonable under the circumstances?

2.  Was the advice given to the Company by its attorneys that a corporation does not have a duty to disclose the underlying conduct which is the subject of an investigation into possible criminal wrongdoing in its public filings with the SEC pursuant to federal securities laws and the regulations promulgated thereunder until someone was charged reasonable under the

---

[1] In the Court's September 17, 2009 Scheduling Order, the parties were directed to file *Daubert* motions by October 30, 2009. Although this *in limine* motion does not seek to exclude Mr. Dandridge's Report and testimony on traditional *Daubert* grounds – *i.e.* based on scientific deficiencies in methodology, reliability, *etc.* – plaintiffs have, in an exercise of caution, interpreted the September 17, 2009 Order as requiring the filing of all challenges to the admissibility of expert testimony by October 30, 2009.

                    circumstances?
(*Id.* at 2, 10).[2]

The Report, however, does not identify the counsel that purportedly provided the advice to Herley. (*See id.*). Additionally, while the Report identifies 14 documents that Mr. Dandridge reviewed in rendering his opinions, those materials do not include any documents from the unidentified counsel that allegedly conveyed the alleged legal advice to Herley, including any opinion memoranda. (*See id.* at 1-2 (items A through N)).

In answering the two questions posed by Herley, Mr. Dandridge purported to identify the governing SEC regulations and analyze case law interpreting those regulations. (*See id.* at 3-14). After describing the legal framework, and concluding that a publicly traded company need not disclose the existence of government investigations or criminal wrongdoing prior to the Government's filing of an indictment, the Report concludes that the advice of counsel "was reasonable under the circumstances." (*See id.* at 2, 10). The report, however, does not identify the "circumstances," other than to negate, in conclusory fashion, those circumstances that might lead to a disclosure obligation. For example, the Report concludes:

> In [*Roeder v. Alpha Indus., Inc.*, 814 F.2d 22 (1st Cir. 1987)] the court found that there was not duty to disclose "if there is not statute or regulation requiring disclosure, and no inaccurate, incomplete, or misleading prior disclosure." Such is the case with [Herley]. There was no insider trading, no statute or regulation requiring disclosure, and no inaccurate, incomplete or misleading disclosure in connections with the Company's filings with the SEC.
>
> \*   \*   \*   \*
>
> This language [from instruction 3 to Item 303(a) of SEC Regulation S-K] seems

---

[2] Defendants have not produced any documents memorializing the purported advice Herley received regarding its disclosure obligations in connection with the criminal investigation and the underlying wrongful conduct.

3

particularly applicable where a corporation has financially benefitted in a *material* way from illegal conduct of which the corporation is aware, but which is not otherwise public. This does not appear to be the case with [Herley], since the benefits of any alleged wrongdoing were not material to [Herley].

(*See id.* at 8, 10 (emphasis in original)).

**B.    Mr. Dandridge's Deposition Testimony**

During his September 16, 2009 deposition, Mr. Dandridge confirmed that he was engaged to opine on only the two questions posed in the Report. (*See* Press Dec. Ex. B at 25:19-26:5, 57:9-13). Mr. Dandridge, however, did not recall whether he had ever previously provided advice "on disclosures that should or shouldn't be made about criminal investigations" (*id.* at 44:20-45:2), or whether he advised "companies about disclosure of criminal investigations where the U.S. Government was their largest customer" (*id.* at 52:24-53:3). Additionally, Mr. Dandridge was not sure whether he had ever opined on disclosure duties in a federal securities fraud case. (*See id.* at 9-10).

Mr. Dandridge further confirmed that: he was unaware of the identity of, and did not communicate with, the lawyers that purportedly advised Herley with respect to its disclosure obligations (*see id.* at 60:11-17), he did not actually review any documents authored by the unidentified counsel (*see id.* at 61-64, 117), and his understanding of the advice Herley received stemmed from the deposition transcripts he reviewed, primarily the deposition transcript of Mr. Myron Levy (*see id.*).[3] Mr. Dandridge was also unaware of what, if anything, Herley communicated

---

[3] In light of the fact that Mr. Dandridge's knowledge of the alleged advice of Herley's counsel derives primarily from his review of Mr. Levy's deposition testimony, it is notable Mr. Levy did not provide any specifics as to the substance of such advice, other than to say that counsel advised Herley that information pertaining to the Government's investigation need not be disclosed. (*See* Press Dec. Ex. C at 217-41).

to its outside corporate counsel regarding the Government's investigation or Herley's underlying criminal conduct. (*See id.* at 73).

Mr. Dandridge testified that the various SEC regulations analyzed in his Report were selected because "those are the three items one would look to to make a determination as to whether disclosure would be required." (*Id.* at 75). Mr. Dandridge further testified that he concluded that Herley did not have a disclosure obligation regarding the Government's investigation because disclosure was not required under the SEC regulations he identified, and because there was no insider trading, and no inaccurate, incomplete or misleading prior disclosures. (*See id.* at 77-79). When asked as to the basis for his conclusion that Herley had not made an "[i]nacurate, incomplete or misleading disclosure concerning the investigation or the underlying conduct," Mr. Dandridge responded that Herley "didn't say anything about the grand jury investigation or the underlying conduct" in its SEC filings (*Id.* at 87-88). Mr. Dandridge further testified that, in his opinion, "in order to have the duty to disclose the grand jury investigation or the underlying conduct the company had to have said something that [] was inaccurate about the grand jury investigation or underlying conduct." (*Id.* at 88).[4] His basis for concluding that there was no inside sales was that the complaint

---

[4] In reaching his conclusions, Mr. Dandridge relies largely on cases interpreting a company's disclosure duties under Section 14 of the Securities Exchange Act, which he claims is identical to the duty under Section 10(b). (*See* Press Dec. Ex A at 3-14, Ex. B at 103, 105, 114-15). But at least one of the cases that Mr. Dandridge relies upon came to the opposite conclusion – namely, that 10(b)'s disclosure duty is broader than the duty arising under Section 14. *See Amalgamated Clothing & Textile Workers Union, AFL-CIO v. J.P. Stevens & Co., Inc.*, 475 F. Supp. 328, 332 (S.D.N.Y. 1979) (noting that under Rule 10b-5, as opposed to Section 14, "a statement of an existing intention or changed intention [with respect to compliance with the law] may be necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.") (internal marks and ellipses omitted).

5

did not assert an insider trader claim. (*See id.* at 78-82).[5]

## ARGUMENT

This Court has "broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and jury." *Pelletier v. Main Street Textiles, LP*, 470 F.3d 48, 54 (1st Cir. 2006); *see also Berckeley Invest. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("The district court has discretion to determine whether the expert testimony will help the trier of fact."). Here, the expert opinion of Mr. Dandridge constitutes an impermissible legal opinion on an ultimate issue in this case, and, in any event, is not relevant to an actual issue in dispute.

### A. Courts Routinely Prohibit Parties From Offering Opinion Testimony On the Law Regarding Ultimate Issues

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, provides in relevant part:

> If scientific, technical, or other specialized knowledge will *assist the trier of fact* to understand the evidence or to determine *a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . .

Fed. R. Evid. 702.

In accordance with this Rule, the United States Court of Appeals for the Third Circuit has held that "it is not permissible for a witness to testify as to the governing law since it is the district court's duty to explain the law the jury." *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991); *see also Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province

---

[5] Mr. Dandridge's less than thorough analysis ignores that the complaint clearly pled securities sales by Herley and the insiders that triggered a disclosure duty. (*See* Cmplt. ¶¶ 140-42).

alone to instruct the jury on the relevant legal standards."); *Allstate Prop. & Cas. Ins. Co. v. Vargas*, Civ. A. No. 9-3368 (LDD), 2008 WL 4104542, at *5 (E.D. Pa. Aug. 29, 2008) ("[The expert's] report consists of a series of inadmissible legal opinions about Pennsylvania insurance law. As a general rule an expert's testimony on issues of law is inadmissible.") (internal marks omitted); *The Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*, No. Civ. A. 04-940 (JJF), 2006 WL 2241128, at *1 (D. Del. Aug. 4, 2006) ("The Rules of Evidence do not permit expert testimony as to legal conclusions."); *The Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005) ("The principle that legal opinion evidence concerning the law is inadmissible is so well-established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle.") (internal marks omitted).[6]

Accordingly, although Rule 704(a) of the Federal Rules of Evidence provides that *otherwise admissible* expert testimony is not prohibited simply because it embraces an ultimate issue, "'an expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law.'" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)); *Allstate*

---

[6] This principle is so well-established that the circuits courts of appeal uniformly prohibit expert legal opinions on ultimate issues. *See, e.g., Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997); *Marx & Co., Inc. v. Diner's Club*, 550 F.2d 505, 509-10 (2nd Cir. 1997); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 365-68 (4th Cir.1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986); *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995); *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1270 (9th Cir.1980); *United States v. Vreeken*, 803 F.2d 1085, 1091 (10th Cir. 1986); *Montgommery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1980); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("Every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.") (citing cases).

*Property & Casualty Ins. Co.*, 2008 WL 4104542, at *6 (precluding expert testimony "as to the ultimate legal issue in this matter: whether defendant has presented clear and convincing proof to support a fact-finder's conclusion that [plaintiff's] conduct constitutes bad faith").

Such opinion testimony is not admissible because, in addition to usurping to court's role in instructing the jury as to the applicable legal standards, it does not "assist" the trier of fact. *See Stobie Creek Invs., LLC v. United States*, 81 Fed. Cl. 358, 363 (2008); *see also The Proctor & Gamble Co.*, 2006 WL 2241128, at *1 (expert's analysis of law regarding "commercial success," which was element of defense in patent action, was an inadmissible legal opinion that would "not assist the trier of fact"); *Pharmacia Corp. v. Par Pharm., Inc.*, Civ. A. No. 01-6011 (SRC), 2004 WL 5614917, at *2 (D.N.J. Feb. 14, 2008) ("It is precisely this type of testimony infused with legal opinion that courts have precluded as unhelpful.").

The case of *Casper v. SMG*, 389 F. Supp. 2d 618 (D.N.J. 2005), is particularly instructive. In *Casper*, an antitrust case, plaintiff sought to have a law professor testify as an expert witness. Just, as Mr. Dandridge's does here, the expert in *Casper* "relie[d] on case law and statutes, applying them to the contemporaneous documentary record and oral testimony . . . to answer legal questions." *Id.* at 621 (internal marks omitted). The court in *Casper* held that the proposed testimony, whether it was characterized as addressing an issue of fact or law, was inadmissible. The court concluded by saying that plaintiff "is free when the time comes to make such arguments and offer such conclusions in legal memoranda, [but] he may not do so through the expert testimony of a law professor." *Id.* at 622; *see also Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (proposed legal expert's testimony that "articulates and applies the relevant law" is admissible).

8

B.     **Mr. Dandridge's Opinions Are Inadmissible**

As discussed below, a review of Mr. Dandridge's report and his deposition testimony reveals that his opinion consists of nothing but impermissible legal argument on an ultimate issue. Moreover, even if Mr. Dandridge's Report were not impermissible legal analysis – which it is – his testimony would still be inadmissible because it does not address the actual legal issues embraced by this litigation, and is therefore irrelevant.

1.     **Mr. Dandridge's Expert Report and Testimony Consist of Legal Opinions and Conclusions, Which This Court Should Preclude in Their Entirety**

In the Report, Mr. Dandridge purports to opine on whether the advice that he assumes Herley received from unidentified outside counsel that it was not obligated to disclose the Government's investigation of Herley (as well as the underlying criminal conduct), was reasonable. (Press Dec. Ex. A at 2, 10). In reaching his opinion, Mr. Dandridge identifies the allegedly relevant SEC regulations, and discusses the scope of a publicly traded company's disclosure duties in light of case law interpreting those regulations. (*See id.* at 3-14 ). Despite not knowing how this advice was conveyed or what the unidentified counsel knew concerning Herley's conduct or the investigation when rendering its advice (*see id.* Ex. B at 60-64, 117), Mr. Dandridge concludes that such advice was reasonable because the securities laws purportedly did not impose an obligation on Herley to reveal such information prior to the Government's filing of formal criminal charges. (Press Dec. Ex. A at 2, 10). For example, in discussing the applicability and impact of Item 401(f) of SEC Regulation S-K, Mr. Dandridge opines:

> In [*Roeder v. Alpha Indus., Inc.*, 814 F.2d 22 (1st Cir. 1987)] the court found that there was not duty to disclose "if there is not statute or regulation requiring disclosure, and no inaccurate, incomplete, or misleading prior disclosure." Such is

9

> the case with [Herley]. There was no insider trading no statute or regulation requiring disclosure, and no inaccurate, incomplete or misleading disclosure in connections with the Company's filings with the SEC.

(Press Dec. Ex. A at 8).

Similarly, in discussing the meaning and impact of Item 303 of SEC Regulation S-K, Mr. Dandridge concludes:

> This language seems particularly applicable where a corporation has financially benefitted in a *material* way from illegal conduct of which the corporation is aware, but which is not otherwise public. This does not appear to be the case with [Herley], since the benefits of any alleged wrongdoing were not material to [Herley].

(*Id.* at 10 (emphasis in original)).

Mr. Dandridge's report – which reads more like a memorandum of law – is exactly the kind of legal opinion on an ultimate issue that the courts have universally deemed inadmissible. *See* Point A, *supra*; *see also Specht*, 853 F.2d at 807 ("A witness cannot be allowed to give an opinion of a question of law . . . . There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.").

Indeed, numerous courts, including the Third Circuit, have rejected a party's attempt to introduce expert testimony regarding the meaning and applicability of the securities laws. *See Berckeley Inv. Group, Ltd.*, 455 F.3d at 218 (holding inadmissible expert testimony regarding "the legal effect of various SEC pronouncements" whether defendant "complied with legal duties under the securities laws," and whether "in light of the apparent routine industry practice it was reasonable for [defendant] to have believed that it was entitled to" a regulatory exemption); *United States v. Stewart*, 433 F.3d 273, 311-12 (2d Cir. 2006) (trial court's exclusion of testimony of securities law expert on legality of trades was proper); *Adalman*, 807 F.2d at 368 (in case based on violations of

10

federal and state securities laws, trial court did not err in precluding expert from testifying "in substantial part to the meaning and applicability of the securities laws to the transactions here, giving his expert opinion on the governing law").

Defendants' transparent bid to introduce a legal opinion regarding the securities laws in the guise of an opinion regarding the reasonableness of outside counsel's legal advice is unavailing. Indeed, Mr. Dandridge's conclusions regarding the reasonableness of counsel's advice turn on his opinion that the SEC regulations he identifies as relevant did not impose a disclosure obligation on Herley. (*See* Press Dec. Ex. A at 3-14). In any event, courts have rejected virtually identical attempts to introduce legal analysis couched as opinions on the reasonableness of counsel's advice. For example, in *Stobie Creek Invs., LLC v. United States*, 81 Fed. Cl. 358 (2008), an action brought by a partnership challenging a ruling by the IRS, the court of federal claims precluded expert testimony regarding the reasonableness of tax counsel's advice:

> Plaintiffs attempt to counter defendant's characterization of the expert reports and testimony as pure legal analysis by arguing that their experts "will provide an expert evaluation of the contents of the Jenkens & Gilchrist opinion to standards and practices regarding tax opinions." This characterization precisely encapsulates the problem. *The expert reports are lengthy analyses of past precedent, complemented by arguments attempting to persuade the court that plaintiffs reasonably relied on the legal opinions in a law firms tax opinion letter*.

*Id.* at 363 (internal citation omitted & emphasis added); *see also Tigers Eye Trading, LLC v. Commissioner of Internal Revenue*, 97 T.C.M. (CCH) 1622, 2009 WL 1475159, at *22-23 (U.S. Tax Ct. May 27, 2009) (barring as legal conclusion expert's testimony that "analyzes how [tax counsel's] opinion fulfills the requirements of Treasury Department Circular No. 230 " and "is of the quality and character upon which taxpayers such as [defendants] could reasonably rely in preparing their tax returns"); *cf. The Proctor & Gamble Co.*, 2006 WL 2241128, at *1 (holding inadmissible expert's

analysis of law regarding defense in patent action).

In sum, Mr. Dandridge does not offer any "scientific, technical or other specialized knowledge" that will assist the finder of fact to determine a "fact in issue." To the contrary, he intends to opine on an ultimate issue: the legal criteria regrading a public company's duty to disclose pre-indictment government investigations and whether counsel's advice was reasonable in light of such criteria. These opinions are inadmissible as expert testimony, and the Court should exclude Mr. Dandridge from offering evidence at trial, or in support of any motion for summary judgment that defendants' may file.[7]

### 2. Mr. Dandridge's Opinions are Excludable on the Independent Ground That They Irrelevant

Even if Mr. Dandridge's opinion on an ultimate issue did not constitute impermissible legal analysis – which it does – this Court should nonetheless preclude his testimony because it is irrelevant to any issue in this litigation. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").

As an initial matter, plaintiffs have not challenged the advice Herley allegedly received from counsel, and have not named Herley's alleged counsel as a defendant to this action. Moreover, despite cobbling together over 40 affirmative defenses in their answer, defendants do not specifically raise reliance on the advice of counsel as an affirmative defense. (*See* R. Doc. # 88, Defendants'

---

[7] Ultimately, it appears that defendants are attempting to repackage arguments they raised in their motion to dismiss, and which were rejected by this Court, in the guise of an expert opinion on the law. *See* Herley Industries, Inc.'s Memorandum of Law in Support of Motion to Dismiss Consolidated Complaint, at 40-42 (arguing that Herley was under no obligation to disclose uncharged criminal conduct and citing several cases that were also analyzed by Mr. Dandridge in his expert report).

12

Answer to Consolidated Complaint, at 26-34).[8]  In any event, Mr. Dandridge's opinion – which focuses primarily on whether certain SEC regulations require the pre-indictment disclosure of criminal investigations and conduct – does not address the actual issues implicated in this case. Plaintiffs have never argued that the failure to disclose the Government's investigation was, in and of itself, a violation of the securities laws.  Rather, plaintiffs have consistently alleged that Herley's statements identifying the Government as its single largest client, touting its long-standing relationship with the Government, claiming material compliance with applicable government regulations and laws, and warning that future non-compliance with such regulations and laws could adversely affect Herley's business, were rendered misleading due to Herley's omission of the fact that it was being criminally investigated for fraud by its single largest client, the United States Government.  (*See* Cmplt. ¶¶ 51-61; *see also* Plaintiffs' Memorandum of Law in Opposition to the Motion of Defendants Herley Industries Inc. and Lee Blatt to Dismiss the Complaint, at 3, 12-24).

Mr. Dandridge's report is virtually devoid of any analysis of whether the above statements Herley volunteered in its corporate filings triggered an obligation to disclose the existence of the Government's criminal investigation and the subject matter of that investigation.  (*See* Press Dec. Ex. A).  Rather, at deposition Mr. Dandridge merely advanced the tautological conclusion that Herley's corporate filings did not contain "[i]nacurate, incomplete or misleading disclosure[s] concerning the [grand jury] investigation" because they "didn't say anything about the grand jury investigation or the underlying conduct" (*Id.* at 87-88).[9]  This question begging analysis demonstrates

---

[8] Notably, Mr. Dandridge does not opine that Herley was reasonable to rely on counsel's advice under the circumstances, just that the advice itself was reasonable.  (*See* Press Dec. Ex. A).

[9] *See also* Press Dec. Ex. B at 88 (Mr. Dandridge's testimony that, "in order to have the duty to disclose the grand jury investigation or the underlying conduct the company had to have said

13

that Mr. Dandridge did not seriously contemplate the relevant issue: whether Herley's public comments regarding the critical nature of its relationship Government, its single largest client, as well as the importance of complying with government contracting regulations, triggered a disclosure obligation with respect to the Government's criminal investigation and Herley's underlying wrongful conduct.[10]

As such, Mr. Dandridge's legal analysis is not relevant, would not assist the trier of fact, and should be precluded in its entirety.[11]

---

something that [] was inaccurate about the grand jury investigation or underlying conduct.")

[10] Moreover, Mr. Dandridge's conclusion that there were no insider sales triggering a disclosure obligation because the complaint did not allege insider sales is simply incorrect. (*See* Cmplt.¶¶ 140-42).

[11] In fact, the only Section 10(b) cases that Mr. Dandridge relies upon suggest that disclosure was required here.  *See In re Par Pharm. Sec. Litig.*, 733 F. Supp. 668, 677-78 (S.D.N.Y. 1990) (holding that undisclosed illegal conduct can be actionable if it renders a corporation's statements about a particular practice false or misleading, and that the defendant company's illegal payoffs to the FDA gave rise to securities fraud claims because the payoffs rendered false or misleading the company's statements extolling the company's success and expertise in obtaining FDA approvals for its products); *Ballan v. Wilfred Am. Ed. Corp.*, 720 F. Supp. 241 (E.D.N.Y. 1989) (finding actionable statements that the company's "prosperity would continue" when the company knew that the prosperity was the result of illegal activity that was then subject to government investigation).

**CONCLUSION**

For all the above reasons, this Court should exclude from evidence the Report and testimony of Mr. Dandridge, and preclude Mr. Dandridge from appearing as a witness at trial.

Dated: October 30, 2009
      New York, New York

    Respectfully submitted,

    **KIRBY McINERNEY LLP**

    By: /s/
    Ira M. Press (ipress@kmllp.com)
    825 Third Avenue, 16th Floor
    New York, New York 10022
    Telephone: (212) 371-6600
    Facsimile: (212) 751-2540
    *Plaintiffs' Lead Counsel and Counsel for Lead Plaintiff Galleon Management, L.P.*

    Stanley P. Kops (SPK 6328)
    LAW OFFICE OF STANLEY P. KOPS
    102 Bala Avenue
    Bala Cynwyd, PA 19004
    (610) 949-9999
    *Plaintiffs' Liaison Counsel*

    Christopher Keller (*pro hac vice*)
    Jonathan Gardner (*pro hac vice*)
    LABATON SUCHAROW LLP
    140 Broadway
    New York, New York 10005
    Telephone: (212) 907-0700
    Facsimile: (212) 818-0477
    *Plaintiffs' Counsel*
    *Counsel for Plaintiff Norfolk County Retirement System and Additional Plaintiffs' Counsel*