# Schnader
## ATTORNEYS AT LAW

1600 MARKET STREET   SUITE 3600
PHILADELPHIA, PA 19103-7286
215.751.2000   FAX 215.751.2205   schnader.com

August 14, 2009

Albert S. Dandridge, III
Direct Dial 215-751-2178
Direct Fax 215-751-2205
E-mail: adandridge@schnader.com

James T. Smith, Esq.
Blank Rome LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA   19103

Re:   **In Re Herley Industries, Inc. Securities Litigation**
**United States District Court, Eastern District of Pennsylvania**
**Civil Action No. 06-2596(JRS)**

Dear Mr. Smith:

I am a senior partner and Chairman of the Securities Practice Group of Schnader Harrison Segal & Lewis LLP, a law firm whose primary office is located in Philadelphia, Pennsylvania. My areas of specialty include corporate and securities law and as such I have negotiated and prepared or reviewed the transactional documents for scores of private placements of equity and debt securities for public and private companies and also prepared and reviewed hundreds of registration statements and various periodic reports for public companies filed with the Securities and Exchange Commission (the "SEC") and a copy of my résumé is attached hereto as Exhibit A.  You have requested my opinion on the issues and documents you communicated to me in connection with the above-captioned case.  I am being compensated at a rate of $525.00 per hour.

In rendering my opinions in connection with the foregoing I have reviewed the following documents or excerpts therefrom, all of which you provided to me:

A.     The complaint entitled In Re Herley Industries, Inc. Securities Litigation, filed in the United States District Court for the Eastern District of Pennsylvania, Civil Action No. 06-2596(JRS);

B.     Herley Industries, Inc.'s Memorandum of Law in Support of Motion to Dismiss Consolidated Complaint;

C.     The Individual Defendant's Memorandum of Law in Support of Motion to Dismiss Complaint;

D.     Plaintiff's Memorandum of Law in Opposition to the Motion of Defendants Herley Industries, Inc. and Lee Blatt to Dismiss the Complaint;

James T. Smith, Esq.
August 14, 2009
Page 2

E.    Plaintiffs' Memorandum of Law in Opposition to the Motion of Defendants Garefino, Gilboy, Kelley, and Levy to Dismiss Plaintiffs' Consolidated Class Action Complaint;

F.    Herley Industries, Inc.'s Reply Brief in Further Support of its Motion to Dismiss Plaintiffs' Consolidated Complaint;

G.    The Individual Defendants' Reply Brief in Support of Motion to Dismiss Complaint;

H.    Order, by Judge Juan A. Sánchez, dated July 17, 2007;

I.    Form 10-K for the fiscal year ended August 1, 2004, filed with the SEC by Herley Industries, Inc.;

J.    Form 10-K for the fiscal year ended July 31, 2005, filed with the SEC by Herley Industries, Inc.;

K.    Transcript of the deposition of Lee Blatt;

L.    Transcript of the deposition of Thomas Gilboy;

M.    Transcript of the deposition of Neil Garefino; and

N.    Transcript of the deposition of Myron Levy.

I have also relied on my experience as a corporate and securities lawyer (see Exhibit A) and conferences with you and your colleagues regarding the subject matter of the subject action.

Below are the questions that you asked and my responses thereto.

*Question 1*    *Was the advice given to Herley Industries, Inc. (the "Company") by its attorneys that a corporation does not have a duty to disclose the existence of an investigation into possible criminal wrongdoing in its public filings with the SEC pursuant to the federal securities laws and the regulations promulgated thereunder until someone was charged reasonable under the circumstances?*

Response    Yes.  In my opinion the advice the Company was given that it was not obligated to disclose the grand jury investigation until someone was charged was reasonable under the circumstances.

James T. Smith, Esq.
August 14, 2009
Page 3

I.      Items 103, 401(f), and 303 of SEC Regulation S-K

       Regulation S-K sets forth disclosure requirements of companies in registration statements, periodic reports and proxy materials.

    A.      Item 103 of SEC Regulation S-K

       Item 103 requires public companies to:

> "Describe briefly any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought. Include similar information as to any such proceedings known to be contemplated by governmental authorities."
> 17 C.F.R. §229.103.

       The language of Item 103 reveals the somewhat vague issues corporations have had to wrestle with in order to determine whether or not disclosure is required.

       Item 103 only requires disclosure of "material" legal proceedings. The Supreme Court has said that information is material if "a reasonable investor might have considered [it] important in the making of [an investment] decision." Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972).

       Even more problematic than the materiality requirement of Item 103, is the provision's requirement of disclosure of material legal proceedings "known to be contemplated by governmental authorities." Neither Item 103, nor the instructions

James T. Smith, Esq.
August 14, 2009
Page 4

thereto, attempt to clarify the point at which it can be said that a corporation knows that legal proceedings are contemplated.

With regard to the Department of Justice (the "DOJ"), a corporation still does not actually know that legal proceedings are contemplated even after it receives a "target" letter from the U.S. Attorney's office. As defined in the DOJ Manual: "A 'target' is a person as to whom the prosecutor or the grand jury has substantial evidence linking him/her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." It is my understanding that prior to the indictment on June 6, 2006, the Company was not a "target," only a "subject"—Lee Blatt, its former Chairman and CEO, was a "target." While a large majority of "targets" are ultimately indicted, the decision to indict is still vested with the grand jury, whereas "target" letters are sent by the prosecutor. "A 'subject' of an investigation is a person whose conduct is within the scope of a grand jury's investigation." DOJ Manual §9-11.150. Just because a person is a "target" does not mean that such person will ultimately be indicted.

Neither Item 103, nor the instructions thereto, attempt to clarify the point at which it can be said that a corporation knows that legal proceedings are contemplated.

The opinion in United States v. Crop Growers Corporation, 954 F.Supp. 335 (D.D.C. 1997) (discussed in more detail below), concludes that Item 103 does not require disclosure of uncharged criminal conduct. In In re Browning-Ferris Industries, Inc. Shareholder Derivative Litigation, 830 F.Supp. 361, 369 (S.D. Tex. 1993), aff'd mem., 20 F.3d 465 (5th Cir. 1994), the court held that receipt of a target letter does not trigger an

James T. Smith, Esq.
August 14, 2009
Page 5

obligation to disclose under Item 103.  Another case suggests that the rule set forth in

United States v. Matthews, 787 F.2d 38 (2d Cir. 1986) (discussed in more detail below),

(which has held that SEC regulations did not required disclosure of uncharged criminal

conduct) with regard to disclosure of uncharged criminal conduct of officers, directors

and managers may be applicable to Item 103 disclosure of criminal wrongdoing of a

corporation.  See,  Bolger v. First State Financial Services, 759 F.Supp. 182 (D.N.J.

1991).

B.    Item 401(f) of SEC Regulation S-K

Item 401(f) requires public companies to disclose legal proceedings concerning

officers, directors and nominees.  Under Item 401(f), a public company must:

> "Describe any of the following events that occurred during
> the past five years and that are material to an evaluation of
> the ability or integrity of any director, person nominated to
> become a director or executive officer of the registrant. . .
> (2) Such person was convicted in a criminal proceeding or
> is a named subject of a pending criminal proceeding
> (excluding traffic violations and other minor offenses)."
> 17 C.F.R. §229. 401(f).

Like Item 103, the plain language of Item 401(f) reveals the central issues a

corporation will have to consider in making its determination to disclose.

- First, the information must be material.

- Second, the director or officer must be a "named subject of a criminal

  proceeding."

James T. Smith, Esq.
August 14, 2009
Page 6

The language suggests that formal criminal proceedings must have been instituted against the individual before there is any need to disclose any wrongdoing. Several cases brought for violations of the antifraud provisions of the securities laws, however, have expanded on the limiting language of Item 401(f) with regard to possible criminal wrongdoing of directors and officers, instead focusing on the materiality of the information without regard to the language of Item 401(f) (these cases are discussed below).

In the context of a criminal prosecution for failure to disclose uncharged criminal wrongdoing, the Second Circuit in <u>Matthews</u> reversed the conviction of a director of Southland Corporation under §14(a) of the 1934 Act and Rule 14a-9 thereunder, for failing to disclose in a proxy statement that he had engaged in a conspiracy to bribe public officials and to defraud the United States and that he failed to disclose this to Southland's audit committee, the FBI and the SEC. When the proxy statement was issued, Matthews and Southland knew that Matthews was the subject, not the target, of a grand jury investigation. Noting that the jury had acquitted Matthews on the conspiracy count, the court held that "at least so long as uncharged criminal conduct is not required to be disclosed by any rule lawfully promulgated by the SEC, nondisclosure of such conduct cannot be the basis of a criminal prosecution." <u>Matthews</u> at 49.

In addition, as the Second Circuit pointed out, the SEC itself questioned whether Matthews should have been prosecuted. Then-SEC Regional Director, Ira Sorkin, said "I

James T. Smith, Esq.
August 14, 2009
Page 7

don't know of any case where someone is accused of failing to disclose a crime they haven't been convicted of."

Relying on Matthews, the United States District Court for the District of Columbia in Crop Growers, held that Item 401(f) does not require disclosure of uncharged criminal conduct.

Some of the other decisions after Matthews suggest wrongdoing by officers and directors—regardless of whether or not criminal proceedings have been commenced— should be disclosed.  However, these cases generally dealt with a situation in which the defendant contradicted or mischaracterized in its disclosure the nature of the investigation, which made the disclosure inaccurate, incomplete or misleading.  See In re Par Pharmaceutical, Inc. Securities Litigation, 733 F.Supp. 668 (S.D.N.Y. 1990) and Ballan v. Wilfred American Educational Corp., 720 F.Supp 241 (E.D.N.Y. 1989).  That is not the case with respect to the Company's disclosure which was silent with respect to the grand jury investigation.  The factually relevant cases adopt the bright-line rule of Matthews.

- In Roeder v. Alpha Industries, Inc., 814 F.2d 22 (1st Cir. 1987), an investor filed a civil securities fraud suit against Alpha for failing to disclose, until an indictment was imminent, that a vice-president had paid a bribe to obtain subcontracts on behalf of the company. Defendants, relying on Matthews, argued that information regarding uncharged criminal activity need not be disclosed as a matter of law.

James T. Smith, Esq.
August 14, 2009
Page 8

The First Circuit held that Roeder's complaint did not allege facts that,

if proved, would establish that Alpha had a duty to disclose the alleged

illegal payments.

In Roeder, the court found that there was no duty to disclose "if there is no insider

trading, no statute or regulation requiring disclosure, and no inaccurate, incomplete, or

misleading prior disclosure."  Such is the case with the Company.  There was no insider

trading, no statute or regulation requiring disclosure, and no inaccurate, incomplete or

misleading disclosure in connection with the Company's filings with the SEC.

- In In re Teledyne Defense Contracting Derivative Litigation, 849

  F.Supp. 1369 (C.D. Cal. 1993), the court, relying in part on Matthews,

  said that until conduct is charged as being criminal, neither any

  investigation nor the underlying conduct needs to be disclosed.  The

  court held that the fact that defendants had engaged in widespread

  criminal and fraudulent conduct with regard to bidding on defense

  contracts "—under the case law and the SEC regulation—does not

  become a fact that must be disclosed until it is at least charged (in

  which case the charge is material) or proven (in which case the proven

  conduct is material.)"  Id. at 1383.

- In Amalgamated Clothing and Textile Workers Union v. J.P. Stevens

  & Co., 475 F.Supp. 328 (S.D.N.Y. 1979), vacated based on settlement,

  638 F.2d 7 (2d Cir. 1980), the court stated that "Item 401(f) only

James T. Smith, Esq.
August 14, 2009
Page 9

> requires disclosure of criminal proceedings pending against a nominee.
> It does not require disclosure of illegal intentions or even of crimes
> committed which have not been the subject of legal proceedings." Id.
> at 332. Plaintiffs had accused the company of failing to disclose in a
> proxy solicitation that the nominees had, inter alia, engaged in activity
> designed to thwart labor laws.

C.     MD&A – Item 303 of SEC Regulation S-K

Item 303 provides for disclosure of "financial condition and results of operations." 17 C.F.R. §229.303.

The court in Crop Growers concluded that Item 303 did not require a company to disclose uncharged criminal conduct on due process grounds. On their face, the language of Item 303 and the instructions thereto, suggest that a company might be obligated to make such disclosure under Item 303 if the disclosure of the wrongdoing is likely to have a material and detrimental impact on future operating results or financial conditions, or if the cessation of the wrongdoing will adversely impact the company's results of operations in the future.

Specifically, Instruction 3 to 303(a) provides:

> "The discussion and analysis shall focus specifically on
> material events and uncertainties known to management
> that would cause reported financial information not to be
> necessarily indicative of future operating results or of
> future financial condition. This would include descriptions
> and amounts of (a) matters that would have an impact on
> future operations and have not had an impact in the past,

James T. Smith, Esq.
August 14, 2009
Page 10

> and (b) matters that have had an impact on reported
> operations and are not expected to have an impact upon
> future operations.

This language seems particularly applicable where a corporation has financially

benefitted in a <u>material</u> way from illegal conduct of which the corporation is aware, but

which is not otherwise public.  This does not appear to be the case with the Company,

since the benefits of any alleged wrongdoing were not material to the Company.

Based upon the SEC disclosure requirements and the weight of the cases cited

above, it is my view that the Company was given reasonable advice by its attorneys that

it was not required to disclose the grand jury investigation until someone was charged.

<u>Question 2</u>    *Was the advice given to the Company by its attorneys that a corporation does not
have a duty to disclose the underlying conduct which is the subject of an investigation into
possible criminal wrongdoing in its public filings with the SEC pursuant to the federal securities
laws and the regulations promulgated thereunder until someone was charged reasonable under
the circumstances?*

<u>Response</u>    Yes.  In my opinion the advice that the Company was given that it was not
obligated to disclose the wrongdoing underlying an investigation until someone was charged was
reasonable under the circumstances.

A.    <u>United States v. Crop Growers Corporation</u>

The opinion by the United States District Court of the District of Columbia,

arising out of the investigation by the Independent Counsel ("IC") investigating former

Secretary of Agriculture Michael Espy, addresses the applicability of the various

disclosure requirements discussed above, and concludes that there is no duty to disclose

uncharged criminal conduct.

James T. Smith, Esq.
August 14, 2009
Page 11

In Crop Growers, the court decided a motion to dismiss an indictment brought by the IC against Crop Growers Corporation ("Crop Growers") and two former officers and directors charging them with conspiring to make and conceal campaign contributions to the brother of Secretary Espy, which violated the Federal Election Campaign Act ("FECA").

Among other charges, the defendants were specifically indicted under 18 U.S.C. 1001 with failing to disclose in ten different filings with the SEC: "(a) that Crop Growers violated FECA by making illegal campaign contributions; (b) that a material contingent liability existed for potential criminal and civil fines because of said violations; (c) that Crop Growers' financial statements were misleading; (d) that Crop Growers maintained false books and records; and (e) that Crop Growers, its subsidiaries, and their key officers faced criminal and civil sanctions under provisions other than FECA and that their ability to operate could be severely affected as a result." Id. at *6.

The court's analysis of the viability of these counts began by noting that a §1001 concealment case requires that the defendants had a legal duty to disclose the facts at the time of the concealment. Id. (citing cases). Relying on Matthews, the defendants argued that there was no duty to disclose uncharged criminal conduct. Id. at *7. The IC countered that, even if Matthews was applicable to the individual defendants, it should not apply to Crop Growers because a corporation does not have a constitutional right against self-incrimination. The court rejected this analysis of Matthews, finding that

James T. Smith, Esq.
August 14, 2009
Page 12

Fifth Amendment concerns had merely buttressed the holding of Matthews, which was

primarily grounded in due process concerns.  Id. at *8.

The court also noted that "the SEC itself has, in conjunction with the proxy

statement provisions of the securities law, failed to adopt such a broad disclosure

requirement.  The provisions of Item 6 of Schedule 14A, which require only disclosure of

criminal convictions or pending criminal proceedings, were proposed in 1976.  Securities

Exchange Act Release No. 5758, 1976-77 Transfer Binder, Fed. Sec. L.Rep. (CCH)

¶80,783, and adopted in 1978, Securities Exchange Act Release No. 5949, 1978 Transfer

Binder, Fed. Sec. L. Rep. (CCH) ¶81,649.  The Commission [SEC] found that

information about directors' and officers' involvement in litigation was material to

investors, Securities Exchange Act Release No. 5949, supra, at p. 80,618.  The

Commission considered requiring disclosure of questionable or illegal payments, see

Securities Exchange Act Release No. 13185, 1976-77 Transfer Binder, Fed. Sec. L. Rep.

(CCH) ¶80,897 at 87,382-84, but failed to adopt such a requirement.  See Securities

Exchange Act Release No. 15570, 1979 Transfer Binder, Fed. Sec. L. Rep. (CCH)

¶81,959 at 81, 392.  Thus, the SEC clearly knows how to write specific disclosure

requirements into its regulations, and has chosen not to do so for uncharged criminal

conduct."  Id. at *8.

The court analyzed whether Items 401(f), Item 103 or Item 303 required

disclosure of the uncharged conduct.

James T. Smith, Esq.
August 14, 2009
Page 13

With respect to Item 401(f), the court held that "its own examination of the language" in the item led it to the same conclusion as the court in Matthews. Id at *10.

With respect to Item 103, the court noted that it only requires disclosure of proceedings "known to be contemplated," and because the defendants had no knowledge that the government was contemplating proceedings or even an investigation, there was no disclosure requirement. The court also noted the holding in In re Browning-Ferris Industries, Inc. Shareholder Derivative Litigation, that receipt of a target letter does not trigger an obligation to disclose under Item 103.

As for Item 303, the IC argued that the regulation required Crop Growers to disclose that its violations of FECA jeopardized the company's participation in the Federal Multi-Peril Crop Insurance Program, which constituted a large portion of the company's business. The court found this argument "attenuated and untenable." Id. at *10. "Qualitative terms such as 'risk,' 'trend' and 'uncertainty' do not provide sufficient notice that a particular disclosure is required to allow criminal activity to attach for alleged non-disclosure. . . . Such terms are, quite simply, too vague and amorphous to give fair notice, required by the Due Process clause, of what disclosure is required." Id.

It is worth noting that the indictment charged the defendants with securities fraud under Section 17(a) of the Securities Act of 1933. After noting that a prosecution under this provision also requires a duty to disclose, the court adopted its reasoning related to the §1001 charge and dismissed the 17(a) count as well.

Schnader
ATTORNEYS AT LAW

James T. Smith, Esq.
August 14, 2009
Page 14

      In <u>Bolger</u>, the court held that companies have no duty to disclose legal theories as to how a given transaction violated the law.  Also <u>see</u>, <u>In re Teledyne Defense Contracting Derivative Litigation</u> and <u>Amalgamated Clothing and Textile Workers Union v. J.P. Stevens & Co.</u> discussed above.

      Based upon the SEC disclosure requirements and the weight of the cases cited above, it is my view that the Company was given reasonable advice by its attorneys that it was not required to disclose the existence of the underlying conduct that was the subject of an investigation into possible criminal wrongdoing until someone was charged.

      Sincerely,

Albert S. Dandridge, III
For SCHNADER HARRISON SEGAL & LEWIS LLP

ASD/s

Attachment

# Schnader
## ATTORNEYS AT LAW

Schnader Harrison Segal & Lewis LLP



# Albert S. Dandridge, III

PARTNER

adandridge@schnader.com
Philadelphia, PA
T 215-751-2178

**EDUCATION**

University of Pennsylvania Law
School, LL.M., 1979

Temple University Beasley
School of Law, J.D., 1978

Temple University, B.A., *magna cum laude*, 1975

**BAR ADMISSIONS**

Pennsylvania, 1978

**PROFESSIONAL AFFILIATIONS**

- Philadelphia Diversity Law
  Group, Inc., Treasurer;
  member, Board of Directors
- USO of Pennsylvania and
  Southern New Jersey,
  member, Board of Directors
- Philadelphia Bar
  Association,
  former member, Board of
  Governors; former chair,
  Business Law Section; co-
  chair, 2008 Bench-Bar
  Conference Committee
- American Law Institute,
  member
- Community Legal Services,
  Inc., former member, Board
  of Directors
- The Disciplinary Board of the
  Supreme Court of
  Pennsylvania, past chair of
  the Hearing Committee
- Philadelphia Stock
  Exchange, former member,
  Board of Governors
- Temple Law Alumni, former
  member, Board of Directors
- Agent Orange Litigation
  Settlement, former member,
  Advisory Board
- Boston University School of
  Law's Morin Center for
  Banking and Financial Law
  Studies, adjunct professor
- NASDAQ OMX Futures
  Exchange, member, Board
  of Governors

**OTHER DISTINCTIONS**

- Listed in *The Best Lawyers*

## AREAS OF PRACTICE

Business and Technology          Securities
Corporate
Financial Services

Mr. Dandridge is chair of the Firm's Securities practice group. His legal work is concentrated in municipal and corporate finance matters, and he regularly counsels major public companies, broker-dealers and investment advisors on their securities reporting and financing requirements. Mr. Dandridge has also lectured frequently on securities topics. Before joining Schnader, Mr. Dandridge served the Securities and Exchange Commission (SEC) as associate director of small business and international corporate finance in the SEC's Division of Corporation Finance. In addition, he served as special counsel in the Division of Corporation Finance.

### Recent Significant Experience

- Served as counsel to corporate trustee in connection with a $14 billion merger and subsequent sale of securities
- Served as local counsel to Fortune 100 clothing manufacturer and distributor in connection with $250 million tender offer and $1.25 billion consent solicitation
- Served as counsel to special committee of independent directors in connection with a NASDAQ-quoted communications company affecting a "going private" transaction
- Served as trustee counsel in a $360 million authority revenue bond refunding
- Advisor to Board of Directors of a multi-state retirement community owner and operator of their corporate governance responsibilities

## COMMUNITY ACTIVITIES

- Chestnut Hill Academy, former member, Board of Governors
- Women's Way, former member, Board of Directors

# Schnader
## ATTORNEYS AT LAW

Schnader Harrison Segal & Lewis LLP

## ATTORNEY NEWS

| | |
|---|---|
| 07/30/2009 | Thirty Schnader Attorneys Recognized in Best Lawyers in America 2010 |
| 06/29/2009 | Albert Dandrige Quoted in Article Detailing the Madoff Sentencing |
| 06/26/2009 | Dandridge Authors Commentary on Recent Legal Diversity Event |
| 05/21/2009 | Dandridge Comments on Seth Williams' Primary Victory in Philadelphia D.A. Race |
| 12/01/2008 | Dandridge Comments on His Participation in Diversity Symposium |
| 10/22/2008 | Nine from Schnader Are Members of the American Law Institute |
| 09/29/2008 | Twenty-Seven from Schnader in Best Lawyers in America 2009 |
| 01/21/2008 | Schnader Attorneys Contribute to The Barristers' Association of Philadelphia Martin Luther King, Jr. Annual Breakfast |
| 09/18/2007 | Many Schnader Attorneys are 2007 Super Lawyers, 2008 Best Lawyers |
| 09/18/2007 | Twenty-Four from Schnader in Best Lawyers in America 2008 |
| 05/29/2007 | Twenty-Seven Schnader Attorneys Named 2007 Pennsylvania Super Lawyers |
| 03/30/2007 | Battle, Dandridge Participate on Attorney Mentoring Panel |
| 09/05/2006 | Twenty from Schnader in Best Lawyers in America 2007 |
| 08/15/2006 | Dandridge Notes Local Legal Moves |
| 07/20/2006 | Thirty-Five Schnader Attorneys Are 2006 Super Lawyers |
| 07/05/2006 | Dandridge Re-Elected to Philadelphia Stock Exchange Board |
| 05/31/2006 | Thirty-Three Schnader Attorneys Honored As 'Pennsylvania Super Lawyers' |
| 04/08/2006 | Dandridge Quoted on New SEC Phila Office Chief |
| 03/09/2006 | Dandridge Noted in Inquirer's Keystone Story |
| 01/18/2006 | Dandridge Named to Philadelphia Bar Association Leadership Posts |
| 12/20/2005 | Schnader Attorneys Feted for Contributions to Community, Profession |
| 09/30/2005 | Dandridge Comments on SEC Changes in Philadelphia |
| 07/07/2005 | Schnader Attorneys Feted as Super Lawyers |
| 06/06/2005 | Al Dandridge Quoted in Press about SEC Changes |
| 01/05/2005 | Albert S. Dandridge III Comments on ABFS About-Face on Unsecured Notes |
| 06/01/2004 | Schnader Lawyers Noted as 'Pennsylvania Super Lawyers' in 19 Categories |

*in America* for corporate law, 2007-2010

- Noted as a "Pennsylvania Super Lawyer" for securities and venture finance law, 2004-2007

# Schnader
## ATTORNEYS AT LAW

Schnader Harrison Segal & Lewis LLP

**ATTORNEY SPEAKING ENGAGEMENTS**

| | |
|---|---|
| 12/17/2008 | Schnader's Dandridge a Course Planner for CLE on Disclosure Documents and Updates by the SEC |
| 12/11/2008 | Chair of Schnader's Securities Practice Group Speaks on the Sarbanes-Oxley Act of 2002 |
| 11/19/2008 | Symposium and Reception: "Creating Access: The Norris Law Firm and the Liacouras Committee" |
| 12/03/2007 | Annual Disclosure Documents & SEC Update |
| 12/12/2006 | Annual Disclosure Documents and SEC Update |
| 10/19/2006 | Enforcement Issues (at Fall 2006 SEC Hot Topics Institute) |
| 01/31/2006 | Preparation of Annual Disclosure Documents |
| 08/12/2005 | Due Diligence Investigations |
| 06/16/2005 | SEC Hot Topics Institute |