IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE HERLEY INDUSTRIES, INC. SECURITIES LITIGATION | CIVIL ACTION<br>NO. 06-2596 (JRS) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO EXCLUDE THE OPINION OF
<u>PLAINTIFFS' EXPERT PATRICK A. MCGEEHIN</u>**

**BLANK ROME LLP**
James T. Smith
Evan H. Lechtman
Nakul Krishnakumar
One Logan Square
Philadelphia, PA 19103
Tel: (215) 569-5500
Fax: (215) 832-5500
*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

      I. The Plaintiffs' Claims ................................................................................................ 2

      II. The McGeehin Report ............................................................................................. 2

ARGUMENT ............................................................................................................................. 5

      I.    MCGEEHIN'S OPINIONS SHOULD BE STRICKEN AS
           INADMISSIBLE LEGAL OPINION ................................................................. 5

           A.    The Opinions Invade the Province of the Judge in
                Explaining What the Law Is. ........................................................................ 5

           B.    McGeehin's Conclusion that Herley Violated the FAR
                and TINA Should Be Excluded As An Improper Legal
                Opinion. ....................................................................................................... 8

CONCLUSION ........................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bammerlin v. Navistar Int'l Transp. Corp.*,
30 F.3d 898 (7th Cir. 1994) ..................................................................................................6

*Berckeley Invest. Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ........................................................................................8, 9, 12

*Bowman v. Burroughs*,
2008 U.S. Dist. LEXIS 105049 (W.D. Pa. Dec. 30, 2008) ............................................12, 13

*Burkhart v. Wash Metro. Area Transit Auth.*,
112 F.3d 1207 (D.C. Cir. 1997) ...........................................................................................11

*Casper v. SMG*,
389 F. Supp. 2d 618 (D.N.J. 2005) ................................................................................11, 12

*Coregis Ins. Co. v. City of Harrisburg*,
2005 U.S. Dist LEXIS 29738 (M.D. Pa. Nov. 8, 2005) ..............................................5, 6, 13

*Cowan v. Treetop Enter., Inc.*,
120 F. Supp. 2d 672 (M.D. Tenn. 1999) ..............................................................................11

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ..............................................................................................................5

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir 2000) ...................................................................................................5

*Good Shepherd Manor Found. v. City of Momence*,
323 F.3d 557 (7th Cir. 2003) ...................................................................................5, 6, 8, 12

*Haager v. Chicago Rail Link, LLC*,
2005 U.S. Dist. LEXIS 24149 (N.D. Ill. Oct. 17, 2005) .......................................................9

*In re Initial Public Offering Litig.*,
174 F. Supp. 2d 61 (S.D.N.Y. 2001) .....................................................................................6

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994) ....................................................................................................6

*In re Ocean Bank*,
 481 F. Supp. 2d 892 (N.D. Ill. 2007) ...................................................................................6, 12, 13

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999) ................................................................................................................5

*Lozano v. City of Hazelton*,
 241 F.R.D. 255 (M.D. Pa. 2007) ...........................................................................................11

*Perez v. Townsend Engineering Co.*,
 562 F. Supp. 2d 647 (M.D. Pa. 2008) .............................................................................. 10, 11

*Pinal Creek Group v. Newmont Mining Corp.*,
 352 F. Supp. 2d 1037 (D. Ariz. 2005) ................................................................................. 8, 13

*United States v. Agnes*,
 753 F. 2d 293 (3d Cir. 1985) ...................................................................................................5

*United States v. Caputo*,
 517 F.3d 935 (7th Cir. 2008) ...................................................................................................6

*United States v. Leo*,
 941 F.2d 181 (3d Cir. 1991) ..................................................................................... 5, 6, 8, 9

*United States v. Pecora*,
 789 F.2d 614 (3d Cir. 1986) .................................................................................................11

**STATUTES**

Armed Services Procurement Act of 1947, Pub. L. No. 87-653, 76 Stat. 528 (1962) ................8

Federal Acquisition Regulations ....................................................................................... passim

Truth In Negotiation Act................................................................................................... passim

**RULES**

Federal Rule of Evidence 702 ........................................................................................................5

Federal Rule of Evidence 704 .................................................................................................. 5, 12

**OTHER AUTHORITIES**

WEINSTEIN'S FEDERAL EVIDENCE § 702.03[3] ............................................................................13

102406.00619/21827891v.1

Defendants Herley Industries, Inc. ("Herley"), Lee Blatt ("Blatt"), Myron Levy ("Levy"), Anello C. Garefino ("Garefino"), Thomas V. Gilboy ("Gilboy"), and John M. Kelley ("Kelley") (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Exclude the Opinion of Plaintiffs' proffered expert Patrick A. McGeehin. For the reasons set forth below, Defendants' motion should be granted.

## PRELIMINARY STATEMENT

Legal conclusions have no place in expert reports. Only a judge may state what the law says, and only a jury may apply that law to the facts of the instant dispute. Indeed, every circuit, including the Third Circuit, has held that experts, even legal experts, are forbidden from opining as to how the law should be interpreted or how a jury should decide with respect to whether a defendant violated a specific statute or regulation.

District courts have both the discretion and the obligation to ensure that experts do not testify as to the governing law of the case. Such improper opinions are routinely held to be inadmissible. Plaintiffs' expert Patrick A. McGeehin, seeks to offer such improper opinion. Indeed, McGeehin not only states what the law is, he also instructs the jury how to apply that law to the purported facts in this case. Specifically, the report stating his opinions directly tracks the language of the relevant statute and/or regulations and recites what Plaintiffs consider to be culpable conduct on the part of Herley. McGeehin then applies the law (or at least his interpretation of the law) to unequivocally conclude that said conduct "resulted in a violation of the provisions of [the Federal Acquisition Regulation] Part 15 and

the Truth in Negotiations Act." This is an improper use of expert testimony—boiling down to nothing more than unsupported legal opinion from a non-legal witness.

As a result, such testimony will not assist the jury in understanding the evidence or deciding a disputed issue of fact—other than to inform them as to how the *expert* believes the verdict should read. To permit such an opinion to reach the jury is highly prejudicial to the deliberative process and flies in the face of the Federal Rules of Evidence. Accordingly, the opinions contained in the report are inadmissible.

## FACTUAL BACKGROUND

### I. THE PLAINTIFFS' CLAIMS

Plaintiffs contend that between October 1, 2001 and June 14, 2006, Defendants violated the federal securities laws by issuing false and misleading statements to the market, thus inflating the price of Herley's publicly traded stock. Plaintiffs' case is predicated on the Defendants' failure to disclose an alleged illegal scheme by Herley and Blatt to defraud the U.S. government in connection with three contracts for the purchase of certain products used in military aircraft. As a prerequisite for establishing securities fraud, the Plaintiffs must therefore prove the existence of the alleged illegal scheme by Herley and Blatt.

### II. THE MCGEEHIN REPORT

Plaintiffs attempt to introduce the expert opinions of Patrick A. McGeehin ("McGeehin"), which are set forth in a report dated July 1, 2009 (the "McGeehin Report"). A copy of the McGeehin Report is attached as Exhibit "A." McGeehin is proffered as an

expert in the field of government contracting.[1]  (*See* Ex. A, p. 15).  A Certified Public Accountant by trade, McGeehin has no legal training.  (*Id.*)

In Part II of the Report, entitled "Scope of Work Performed," McGeehin lets his true purpose be known.  Indeed, from the very outset, McGeehin admits he has been asked to

> [O]pine on certain actions and conduct taken by Herley Industries, Inc. in connection with the negotiation, award and audit of two Navy contracts for the production of Power Heads, <u>and to evaluate those actions to determine if the actions *constituted violations* of the Federal Acquisition Regulations (FAR)</u>.

(Ex. A, p. 2) (emphasis added).  In Part III of the Report (pp. 2- 7) entitled "Federal Acquisition Regulations (FAR) Requirements," McGeehin then proceeds to <u>analyze</u> and <u>explain</u> the process, purpose and precise requirements of the FAR—an enabling regulation of the Truth in Negotiations Act ("TINA")—which dictates how government contractors are to conduct themselves when seeking procurement contracts.  He even references specific provisions of the regulation.  For example, on page three, an *excerpted* definition of "cost or pricing data" under section 2.101 of the FAR can be found.  On page four, the term "defective pricing" is defined and discussed, as well as "reckless disregard."  And on page five, a verbatim copy of a "Certificate of Current Cost or Pricing Data," as required by section 15.406-2, is reproduced.

In Part IV of his Report (pp. 7-11) entitled "Actions Taken by Herley," McGeehin summarily concludes that the information Herley provided to the government was "'defective' in that it was not 'current, accurate and complete.'"  McGeehin next makes a

---

[1] McGeehin admits that he has "never offered an opinion in any matter about whether data constitutes or doesn't constitute cost and pricing data within the meaning of the FAR"—one of the key issues in this case.  (*See* Dep. Trans., P. McGeehin at 59:16, attached as Exhibit "B").

series of bare factual assumptions about Herley's purported conduct in an attempt to support this legal conclusion.[2] (*Id.*)

Lastly, in Part V (p.12) entitled "Opinion and Discussion," McGeehin concludes by stating:

> <u>In my opinion, the actions which Herley took, as listed in Part IV of this report, resulted in [a] violation of the provisions of FAR Part 15 and Truth in Negotiations Act.</u> The actions listed in Part IV resulted in Herley withholding form Government negotiators, 'facts that prudent buyers and seller world reasonably expect to affect price negotiations significantly'. The failure of Herley to disclose this information resulted in the Government being deprived of information needed to negotiate fair and reasonable prices. As such, the negotiated prices for both of the Power Head contracts discussed in this report were based on 'defective pricing', in that the data made available by Herley on which Government negotiations relied was 'inaccurate and incomplete.'
>
> I understand that Herley. [sic] has been in the US Government contracting business for over forty years and during that time has negotiated numerous cost proposals. The FAR Part 15 and TINA requirements applicable to negotiated procurements, which are discussed in this report, are basic, commonly known and essential requirements with which Government Contractors must comply. As an experienced Government Contractor, Herley Industries must have, or should have, been aware of its obligation to comply with these laws and regulations <u>and that its conduct as described above did not comply with these laws and regulations</u>.

(*Id.* at 12) (emphasis added). In short, McGeehin once again usurps the role of the judge and jury in concluding that Herley's purported conduct violated the FAR and TINA.

For the reasons stated below, the opinions set forth in the McGeehin Report constitute inadmissible legal opinion and must be excluded.

---

[2] At his deposition, McGeehin admitted that he made various assumptions in listing the aforementioned examples, and that the jury would have to assume all of the facts as stated in the report in making their determination that Herley's conduct violated the FAR. *See* Ex. B at 95:16-96:11; 97:18-98:18; 132:6-133:8, 143:24-144:2; 166:5-20; 171:2-7; 198:9-199:11.

4

# ARGUMENT

## I. MCGEEHIN'S OPINIONS SHOULD BE STRICKEN AS INADMISSIBLE LEGAL OPINION.

The Supreme Court has imposed upon trial courts the obligation to act as "gatekeepers" to ensure that expert opinions be admitted only where they are both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 (3d Cir 2000); *see also* FED. R. EV. 702, 704. This gatekeeping responsibility extends not only to scientific expert testimony, but to all expert opinions, including proposed testimony based upon technical or other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). As a general rule, "[e]xpert testimony as to legal conclusions that will determine the outcome of a case is inadmissible." *See, e.g., Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). This is simply a matter of black-latter law. Because McGeehin attempts to opine on both: (1) what the law (FAR and TINA) is; and (2) how the law should be applied to the purported facts of this case, the opinions contained in the McGeehin Report are inadmissible.

### A.  The Opinions Invade the Province of the Judge in Explaining What the Law Is.

McGeehin's opinions, as set forth in his Report, improperly attempt to instruct the fact-finder as to the law that applies in this case in deciding whether Herley and Blatt engaged in an illegal fraudulent scheme against the government. District courts have wide discretion in permitting expert testimony on a particular issue. *Coregis Ins. Co. v. City of Harrisburg*, 2005 U.S. Dist LEXIS 29738, at *7 (M.D. Pa. Nov. 8, 2005); *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) (citing *United States v. Agnes*, 753 F. 2d 293, 303 (3d Cir.

5

1985)). In considering whether to allow expert testimony, courts must "limit expert testimony so as to not allow the expert to offer opinion on 'what the law required' or 'testify as to the governing law.'" *See Leo*, 941 F.2d at 196-97. As one court has explained:

> The rule prohibiting experts from providing their legal opinions or conclusions is so well established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle. In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.

*Coregis*, 2005 U.S. Dist LEXIS 29738, at *7-8 (citing *In re Initial Public Offering Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001)); *Good Shepherd*, 323 F.3d at 564 (stating that experts "cannot testify about legal issues on which the judge will instruct the jury"); *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of the law is not a question of fact, to be resolved by the jury after a battle of experts, but is instead a question of law, to be resolved by the court") (internal quotations omitted); *In re Ocean Bank*, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007) ("[C]ourts should not consider testimony on the intended meaning of statutory language unless it is true legislative history."); *see also United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The only legal expert in a federal courtroom is the judge.").

Further, the need to restrict experts from offering legal conclusions is "obviously *most important*" where, as here, "the expert is offering testimony to a jury as fact-finder." *Coregis*, 2005 U.S. Dist LEXIS 29738, at *8 n.3 (emphasis added). The party proffering an expert's testimony bears the burden, by a preponderance of proof, of establishing admissibility. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994). Plaintiffs cannot meet this burden.

Here, McGeehin clearly usurps this Court's province in analyzing the definitions and requirements of the FAR—not to mention the purpose behind each of the aforementioned sections and how they interact with each other. Indeed, almost one-quarter of the report is spent explaining various sections of the FAR including Part 6 ("Competition Requirements"), Part 15 ("Contracting by Negotiation") and Part 2 ("Definitions"). (*See* Ex. A, pp. 2-7). Even dispositive legal terms of art such as "cost or pricing data," and, more importantly, "defective pricing," are not spared from being painted with such a broad, biased brush. (*Id.* at 3-4). Worse yet, McGeehin's Report is inaccurate. As just one example, the report excludes certain language from the definition of "cost or pricing data"—language that could influence the jury in finding for Herley, but which has been intentionally omitted from the report.[3] In essence, Plaintiffs not only try to explain the law, they seek to revise it.

Likewise, on page six of his Report, McGeehin lists five examples of "facts which would normally have a bearing on price negotiations and which, if not disclosed during price negotiations would, *if material*, result in a violation of FAR Part 15 regulations[.]" (Ex. A, p. 5-6) (emphasis added). The concept of "materiality," as used above, is not explained anywhere else in the McGeehin Report. Ironically, those same "examples" then mirror the alleged improper conduct by Herley in Part IV. In light of the "obvious . . . important[ce]" of shielding the jury from such a skewed interpretation of the law applicable to this case, and the undue prejudice that would result from its admission, the opinions contained in the McGeehin Report must be excluded.

---

[3] According to his testimony, McGeehin, in omitting certain sections of the definition, wanted to "highlight" certain phrases in the definition. (Ex. B at 135:6-140:9). He cannot recall *why* he made such decisions to leave language in or take it out, or even if he himself made the edits—it could have been done by his associate, Ed Giddings, or at the behest of counsel. (*Id.* at 139:12-14).

7

**B.     McGeehin's Conclusion that Herley Violated the FAR and TINA Should Be Excluded As An Improper Legal Opinion.**

Application of the law to the facts is reserved for the *jury*—not experts. McGeehin violates this fundamental precept when he repeatedly opines that Herley has *violated* Part 15 of the FAR and TINA. (Ex. A, §§ IV and V).[4] This is improper; and warrants the exclusion of his opinions.

It is well-settled that experts cannot testify that a specific defendant's actions violated a particular statute or regulation. *See, e.g., Good Shepherd*, 323 F.3d at 564; *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1044-48 (D. Ariz. 2005); *Berckeley*, 455 F.3d at 218; *Leo*, 941 F.2d at 196-97. Moreover, the Third Circuit has repeatedly excluded expert reports that state legal conclusions about whether a defendant violated a specific statute. For example, the court in *Berckeley Invest. Group, Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006), in discussing its prior opinion in *United States v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991), a strikingly similar case to the one at hand,[5] stated that the reason an expert in the "field of governmental contracting" was permitted to testify was

---

[4] Nowhere in his Report does McGeehin opine on the whether Herley's actions were consistent with pricing standards in the government contracting industry. Such an opinion may be proper. Rather, McGeehin admits that the purpose of his work was to determine if Herley's actions violated applicable law. (*See* Ex. A, § II).

[5] *Leo* involved an action against a governmental contractor who was alleged to have violated the 1962 amendments to the Armed Services Procurement Act of 1947 ("ASPA"), Pub. L. No. 87-653, 76. Stat. 528 (1962). 941 F.2d at 185. The ASPA is markedly similar to the FAR in that it required a contractor to give the procuring agency a proposal that includes the contractor's "best estimate" of the costs the contractor expects to incur in making the product. *Id.* (citing 10 U.S.C. § 2306(f)(1) (West 1983)). This included material costs, labor, overhead, general and administrative expenses and anticipated profit. *Id.* The government and contractor would then negotiate over the amount of these projections and the estimated total profit before arriving at the final price. *Id.* If the contractor's costs changed before a final agreement was reached, the contractor had to provide the Army with a Certificate of Current Cost, which "certifies that all of the cost information provided to the Army as of the date of the final agreement is *accurate current and complete*." *Id.* (emphasis added). Notably, the FAR has almost identical requirements in section 15.406-2.

8

> [T]he expert's testimony was admissible because it was limited to an explanation of business custom, i.e., that defense contractors generally provided updated cost and pricing data to the government during contract negotiations. <u>Key to our determination was that the expert did not give his opinion as to what was required under the law, or whether the defendant complied with the Act.</u>

*Berckeley*, 455 F.3d at 218 (discussing *Leo*, 941 F.3d at 197) (emphasis added).

*Haager v. Chicago Rail Link, LLC*, 2005 U.S. Dist. LEXIS 24149, at *13 (N.D. Ill. Oct. 17, 2005) is also instructive. In *Haager*, the court <u>excluded</u> an expert's conclusion that "all of 49 CFR Part 220 applies to every locomotive ready for use or in use except those sections of the rule or paragraphs of sections that specifically refer to 'lead' or 'controlling' locomotive." *Id.* Specifically, the court stated that "the meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court." *Id.* Accordingly, the court held that although the expert could "testify about the railroad industry," he "may not, however, give legal opinions or conclusions that declare to the jury that a regulation or statute has been violated." *Id.* at *16.

Here, McGeehin attempts to do exactly what *Leo* and *Haager* prohibit: opine as to what is required under the FAR and TINA, and whether Herely violated those laws. In fact, this Court need look no further than the first paragraph of Part II ("Scope of Work Performed") to realize that legal conclusions are to be expected. (*See* Ex. A, p.2) (stating that objective was to "evaluate [Herley's] actions to determine if the action *constituted violations of the Federal Acquisition Regulations*") (emphasis added). This improper scope sets the tone for the entire Report.

In Part IV, McGeehin concludes that Herley submitted "defective" pricing information to the government in connection with certain contracts because that

9

information was not "current, accurate and complete." (Ex. A, p. 7). In essence, McGeehin is once again opining that Herley's conduct violated applicable law. Indeed, the FAR mandates that cost or pricing data must be "current, accurate and complete" or the information will be considered "defective." In stating that the cost or pricing data provided by Herley was "defective," McGeehin improperly concludes that Herley violated the FAR.

Likewise, in Part V, McGeehin's legal opinion is even more obvious. Indeed, McGeehin makes no effort to hide the fact that his sole conclusion is that Herley's conduct, as described in Part IV, "resulted in a violation of the provisions of FAR Part 15 and the Truth in Negotiations Act." (Ex. A, p. 12). McGeehin proceeds to support this legal conclusion by stating that Herley's alleged—and on some occasions, uncorroborated—conduct "<u>resulted</u>" in Herley withholding facts that would affect the negotiations, which in turn "<u>resulted</u>" in the government being deprived of necessary information based on "defective pricing" and "inaccurate and incomplete" estimates, which, ultimately, "<u>resulted</u>" in violations of the FAR and TINA. (Ex. A, p. 12). Incredibly, McGeehin <u>admits</u> that "interpreting the FAR . . . with respect to a particular provision" would constitute a "legal opinion." (*See* Ex. B at 33:1-34:4, 40:2-7;).

In addition, McGeehin improperly tracks the language of the FAR in making his conclusion. As shown above, Part V lifts at least three legal terms of art from the FAR: (1) "facts that prudent buyers and seller world reasonably expect to affect price negotiations significantly" (which is part of the definition of "cost or pricing data"); (2) "defective pricing"; and (3) "inaccurate and incomplete." Such legal terms of art come directly out of sections 2.101 and 15.407-1, respectively. This is improper. *See, e.g., Perez v. Townsend*

10

*Engineering Co.*, 562 F. Supp. 2d 647, 652 (M.D. Pa. 2008) (refusing to allow expert to opine that product was "defective") (citing *Lozano v. City of Hazelton*, 241 F.R.D. 255, 255-56 (M.D. Pa. 2007)); *Cowan v. Treetop Enter., Inc.*, 120 F. Supp. 2d 672, 684 (M.D. Tenn. 1999) (exclusion of expert testimony utilizing terms contained in federal regulations was appropriate where such terms have a "separate, distinct and specialized meaning in the law different from that present in the vernacular," and stating that "primary responsibility" was such a term); *Burkhart v. Wash Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997). Each of the aforementioned terms have a "separate, distinct and specialized meaning in the law," unlike their ordinary meaning. Such blatant usage of legal terms of art could mislead the jury and unfairly prejudice Herley. *See Perez*, 562 F. Supp. 2d at 652.

The opinion set forth in the second paragraph of Part V fares no better than the first. It states that "[a]s an experienced Governmental Contractor, Herley Industries must have, or should have, been aware of its obligation to comply with these laws and regulations[.]" (Ex. A at p. 12). Courts have held that an expert making such a legal conclusion is impermissible. *See, e.g., Casper v. SMG*, 389 F. Supp. 2d 618, 622 (D.N.J. 2005).

In *Casper*, a case involving the National Labor Relations Act, an expert report explicitly opined that "a sophisticated, experienced and well-counseled employer like SMG should have realized that its decision to require Service Contractors to sign a collective bargaining agreement with [the Carpenters] violated *Section 8(e)*." 389 F. Supp. 2d at 622. The court held that "[w]hether this conclusion is characterized as an issue of law or of ultimate fact, it is an issue for the Court to decide." *Id.* (citing *United States v. Pecora*, 789 F.2d 614, 620 n.2 (3d Cir. 1986)). The court observed further that "the analysis of this question

11

ha[d] a direct bearing on the legal determination that this Court may be asked to make in a later stage of this litigation." *Id.* The expert report was, accordingly, struck. *Id.* at 623.

As in *Casper*, the above cited language must be stricken for the same reason: it displaces the court's role in making such a determination. *See also Berckeley*, 455 F.3d at 219 (stating section of expert affidavit opining that "in light of the apparent routine industry practice it was reasonable for Berckeley to have believed that it was entitled to the *Section 4(1)* exemption, is inadmissible because it concerns Berckeley's legal duties resulting from the various SEC pronouncements.").

McGeehin is clearly attempting to tell the jury how to decide a critical legal issue in this case: whether Herley violated the FAR and TINA. This is exactly what the Federal Rules of Evidence were designed to prevent. *See* FED. R. EV. 704 advisory committee's note (federal rules do not permit "opinions which would merely tell the jury what result to reach" or which are "phrased in terms of inadequately explored legal criteria."). Indeed, McGeehin explicitly states in his report that Herley's conduct "did not comply with these laws and regulations." (Ex. A, p. 12). As previously stated, this type of legal opinion has repeatedly been excluded. *Good Sheppard*, 323 F.3d at 564; *Ocean Bank*, 481 F. Supp. 2d at 903-04; *see also Bowman v. Burroughs*, 2008 U.S. Dist. LEXIS 105049, at *35 n.8 (W.D. Pa. Dec. 30, 2008).

Notably, Part V even reads like a legal brief: first stating the law, then the facts as McGeehin sees them, and finally drawing the conclusion that the negotiated prices for both contracts were based on "defective pricing." In fact, were the Court to remove the opening language of "In my opinion," the report would be indistinguishable from any other legal argument section. This is unmistakably indicative of impermissible legal opinion. *See Ocean*

12

*Bank*, 481 F. Supp. 2d at 904; *Pinal*, 352 F. Supp. 2d at 1044 (excluded "report read[] more like a legal brief than an expert report"); *Coregis*; 2005 U.S. Dist. LEXIS 29738, at *13 (expert's analysis read as though "it were stripped directly from [plaintiff's] legal papers filed in this case to bolster its argument"); *Bowman*, 2008 U.S. Dist. LEXIS 105049, at *35 n.8.

In sum, expert testimony merely telling the finder of fact what decision to reach is inadmissible, and not helpful to a jury. Such testimony does not assist the trier of fact in understanding the evidence or deciding a disputed issue of fact. *See, e.g., Coregis*, 2005 U.S. Dist. LEXIS 29738, at *8 n.4 (citing WEINSTEIN'S FEDERAL EVIDENCE § 702.03[3] (expert testimony made in "language of statutes, regulations or other legal standards that are at the heart of the case" is not helpful to a jury, and should be excluded)). The opinions set forth in the McGeehin Report should therefore be deemed inadmissible, and excluded.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude the Opinion of Plaintiffs' Expert Patrick A. McGeehin should be granted.

**BLANK ROME LLP**

*s/ James T. Smith*
JAMES T. SMITH
EVAN H. LECHTMAN
NAKUL KRISHNAKUMAR
One Logan Square
Philadelphia, PA  19103
Tel:  (215) 569-5500
Fax:  (215) 832-5500

*Attorneys for Defendants*

Dated: October 30, 2009