IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE HERLEY INDUSTRIES, INC.<br>SECURITIES LITIGATION | CIVIL ACTION<br>NO. 06-2596 (JRS) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE
THE REPORT AND TESTIMONY OF DEFENDANTS'
EXPERT WITNESS ALBERT S. DANDRIDGE, III**

**BLANK ROME LLP**
James T. Smith
Evan H. Lechtman
Nakul Krishnakumar
One Logan Square
Philadelphia, PA 19103
Tel: (215) 569-5500
Fax: (215) 832-5500

*Attorneys for Defendants*

## TABLE OF CONTENTS

I.  DANDRIDGE'S EXPERT OPINIONS ARE ADMISSIBLE BECAUSE THEY DO NOT STATE A LEGAL CONCLUSION. ............................................................... 3

    A.  Dandridge Does Not Opine On the Meaning and Applicability of the Securities Laws. ............................................................................. 3

    B.  Dandridge Does Opine as to Whether Herley Had a Legal Duty to Disclosure the Investigation or the Underlying Conduct ................................ 4

        1.  Cases Cited by Plaintiffs Are Inapplicable And Do Not Involve Securities Law. .............................................................. 6

        2.  Dandridge Is Not Opining on the Ultimate Issue in This Case Because Herley Has Not Been Charged With Violating the Regulations Contained in the Report. .................................. 8

II. DANDRIDGE'S OPINIONS ARE ADMISSIBLE BECAUSE THEY ARE DIRECTLY RELEVANT TO THE ISSUES IN THIS CASE. .................................... 9

    A.  The Report is Relevant to Herley and Blatt's Scienter Under Section 10(b) and to the Individual Defendants' Statutory Good Faith Defense Under Section 20(a). .......................................................... 9

    B.  Plaintiffs Improperly Focus on Whether Dandridge Reviewed the Specific Advice Given by Counsel. ................................................. 10

    C.  Plaintiffs Misconstrue the Scope of the Report. .................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ballan v. Wilfred Am. Ed. Corp.*,
   720 F. Supp. 241 (E.D.N.Y. 1989) ................................................................................11

*Berckeley Inv. Group, Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006) ................................................................................passim

*Cantor v. Perelman*,
   2006 U.S. Dist. LEXIS 86329 (D. Del. Nov. 30, 2006) ................................................11

*Casper v. SMG*,
   389 F. Supp. 2d 618 (D.N.J. 2005) ..................................................................................8

*First Nat'l State Bank v. Reliance Elec. Co.*,
   668 F.2d 725 (3d Cir. 1981) ............................................................................................4

*Gilliand v. Hergert*,
   2008 U.S. Dist. LEXIS 51421 (W.D. Pa. July, 1, 2008) ................................................5

*Howard v. S.E.C.*,
   376 F.3d 1136 (D.C. Cir. 2004) ....................................................................................10

*In re Japanese Elec. Prods. Antitrust Litig.*,
   723 F.2d 238 (3d Cir. 1983) ............................................................................................3

*In re Par Pharm. Sec. Litig.*,
   733 F. Supp. 688 (S.D.N.Y. 1990) ................................................................................11

*Integrated Res. Real Estate Ltd. P'ship Sec. Litig.*,
   850 F. Supp. 1105 (S.D.N.Y. 1993) ................................................................................5

*Klamath Strategic Inv. Fund, LLC v. United States*,
   472 F. Supp. 2d 885 (E.D. Tex. 2007) ........................................................................7, 8

*Lozano v. City of Hazelton*,
   2007 U.S. Dist. LEXIS 13295 (M.D. Pa. Feb. 27, 2007) ................................................9

*Markowski v. S.E.C.*,
   34 F.3d 99 (2d. Cir. 1994) ..............................................................................................9

*Newton v. Merrill, Lynch, Pierce, Fenner & Smith*,
   135 F.3d 266 (3d Cir. 1998) ..........................................................................................10

*Rochez Bros., Inc. v. Rhoades*,
 527 F.2d 880 (3d Cir. 1975) .................................................................................................. 10

*S.E.C. v. Caserta*,
 75 F. Supp. 2d 79 (E.D.N.Y. 1999) ....................................................................................... 10

*S.E.C. v. First Jersey Sec., Inc.*,
 101 F.3d 1450 (2d Cir. 1996) .................................................................................................. 5

*S.E.C. v. Meltzer*,
 440 F. Supp. 2d 179 (E.D.N.Y. 2006) ..................................................................................... 9

*S.E.C. v. Snyder*,
 2008 U.S. App. LEXIS 19835 (5th Cir. Sept. 16, 2008) .................................................. 10, 11

*Stobie Creek Invest., LLC v. United States*,
 81 Fed. Cl. 358 (2008) ............................................................................................................. 7

*Tigers Eye Trading, LLC v. Comm'r of Internal Revenue*, 2009 Tax Ct. Memo
 LEXIS 118 (U.S. Tax Ct. Memo May 27, 2009) ..................................................................... 7

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991) ............................................................................................... 4, 5

*United States v. Downing*,
 753 F.2d 1224 (3d Cir. 1985) .................................................................................................. 3

*United States v. Duncan*,
 42 F.3d 91 (2d Cir. 1994) ........................................................................................................ 8

*United States v. Leo*,
 941 F.2d 181, 196-97 (3d Cir. 1991) .............................................................................. 4, 8, 11

*United States v. McDade*,
 1995 U.S. Dist. LEXIS 11640 (E.D. Pa. Aug. 7, 1995) ....................................................... 4, 8

**STATUTES**

15 U.S.C. § 78t .............................................................................................................................. 10

26 U.S.C. § 6664(c)(1) .................................................................................................................... 7

**OTHER AUTHORITIES**

Federal Rule of Evidence 704 ........................................................................................................ 4

26 C.F.R. 1.6664-4 (2003) .............................................................................................................. 7

Defendants Herley Industries, Inc. ("Herley"), Lee Blatt ("Blatt"), Myron Levy ("Levy"), Anello C. Garefino ("Garefino"), Thomas V. Gilboy ("Gilboy"), and John M. Kelley ("Kelley") (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion in Limine to Preclude the Report and Testimony of Defendants' Expert Witness Albert S. Dandridge, III. For the reasons set forth below, Plaintiff's motion should be denied.

## PRELIMINARY STATEMENT

Plaintiffs seek to exclude the opinions of Defendants' expert, Albert S. Dandridge, III, ("Dandridge") on two grounds: (1) as stating a legal opinion; and (2) as "irrelevant to any issues in this litigation." Neither position is tenable based on the nature and purpose of the report.

As to the first contention, Dandridge is not providing a legal opinion regarding reporting requirements under the securities laws, as Plaintiffs contend. In fact, the regulations referenced in the report—none of which Herley has been accused of violating—merely provide context to the complicated field of securities law. As such, Dandridge's report, properly viewed, constitutes nothing more than a detailed recitation of the analysis *he* would undertake in advising a company such as Herley as to whether it would have to disclose the instant investigation or any underlying conduct. This in turn will aid the jury in determining whether the *actual* legal advice Herley received was "reasonable"—i.e., legally sound—which is relevant to both the issue of Herley and Blatt's culpable mental state (scienter) under section 10(b), and the individual defendant's "good faith" defense under section 20(a).

1

Plaintiffs also claim Dandridge's opinion is "irrelevant" because Herley's counsel is not a named defendant in this case, and because Herley has failed to allege "reliance on counsel" as an affirmative defense. Both allegations are meritless. First, Plaintiffs' claim regarding the parties named in the Complaint is nothing more than a red-herring. Indeed, the report focuses squarely on the information available to Herley—not its counsel—in deciding whether to make a public disclosure. Second, Herley is not required to plead that its (or Blatt's) reliance on legal advice negated scienter under section 10(b)—such reliance is simply one factor to consider when evaluating scienter. Nor does Herley need to raise "reliance on counsel" as an affirmative defense because "good faith" is a *statutory* defense under section 20(a). Lastly, it does not matter whether Dandridge was aware of every specific detail concerning the legal advice given to Herley regarding its disclosure obligations; the only thing that matters is that Dandridge has used his technical knowledge to opine as to what would constitute "reasonable" advice based on custom and practice in the securities industry. Accordingly, Plaintiffs' motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs contend that between October 1, 2001 and June 14, 2006, Defendants issued false and misleading statements to the market which inflated the price of Herley's stock. Plaintiffs' case is predicated on the Defendants' failure to disclose an alleged illegal scheme by Herley and Blatt to defraud the U.S. government in connection with three contracts for the purchase of certain products used in military aircraft. Plaintiffs assert claims against Blatt and Herley pursuant to section 10(b) of the Securities Exchange Act of 1934, as well as claims against the remaining defendants under section 20(a). As a

2

prerequisite for establishing securities fraud, Plaintiffs must prove that Blatt and Herley acted with "scienter" under 10(b), and that the remaining defendants "culpably participated" in the fraud and are not entitled to a "good faith" defense under 20(a). Dandridge's opinions are directly relevant to these issues.

## LEGAL ARGUMENT

I. **DANDRIDGE'S EXPERT OPINIONS ARE ADMISSIBLE BECAUSE THEY DO NOT STATE A LEGAL CONCLUSION.**

    A. **Dandridge Does Not Opine On the Meaning and Applicability of the Securities Laws.**

Plaintiffs contend that Dandridge's report attempts to introduce expert testimony about the "meaning and applicability of the securities laws" in the "guise of an opinion regarding the reasonableness of outside counsel's legal advice." (*See* Plaintiff's Memorandum of Law in Support of its Motion to Exclude at 10-11) (hereinafter "Memo"). They are wrong; and overlook the fact that the report is properly limited to whether the legal advice Herley received from counsel regarding its disclosure obligations under the federal securities laws was "reasonable" based up industry custom and practice.

Courts have "broad discretion" with respect to admitting expert testimony. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006). The Third Circuit has taken the position that Rule 702 creates a "presumption of helpfulness." *United States v. Downing*, 753 F.2d 1224, 1241 (3d Cir. 1985). Likewise, any "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *See In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 279 (3d Cir. 1983), *rev'd on other grounds sum nom*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

3

Although experts may not testify as to the governing law, or instruct the jury how to apply that law to the facts of the instant dispute, expert testimony regarding established industry custom is regularly admitted. *See, e.g., Berckeley*, 455 F.3d at 218; *United States v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991) (affirming the admission of expert's testimony regarding industry customs and practices in the field of defense contracting); *First Nat'l State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (allowing testimony of customs and practices in the banking industry). This is especially true in complex cases, such as this one.[1] *United States v. McDade*, 1995 U.S. Dist. LEXIS 11640, at *7 (E.D. Pa. Aug. 7, 1995) (stating courts permit "expert legal testimony which sheds light on activities not within the common knowledge of the average juror") (internal quotations omitted). Thus, so long as no improper legal opinions are rendered, experts may testify as to "'ultimate issue to be decided by the trier of fact." *Berckeley*, 455 F.3d at 217; FED. R. EV. 704. Because Dandridge's opinions are limited to whether the advice Herley received from its counsel was "reasonable" based on established industry custom, his opinions are admissible.

### B. Dandridge Does Not Opine as to Whether Herley Had a Legal Duty to Disclosure the Investigation or the Underlying Conduct

Plaintiffs mistake Dandridge's approach in analyzing the advice Herley received from its counsel. He is not simply restating the law "in a vacuum," or opining as to Herley's legal duties. *Cf. Leo*, 941 F.2d at 197. Rather, he is supplying the jury with a roadmap as to why it

---

[1] The securities laws are a complicated body of jurisprudence. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991), *cert. denied*, 502 U.S. 813 (1991) ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts."). As a result, cases involving alleged violations of such laws are also very complex, making comprehension by the average juror difficult, at best. To resolve this issue, experts are commonly used to simplify this tangled web. *Berckeley*, 455 F.3d at 216-18.

4

was "reasonable" for Herley's counsel to give the advice it did with respect to whether the company had to make the alleged disclosures.

Plaintiffs do not—and cannot—contest the fact that Dandridge is an expert in the field of securities law. He is an attorney, and has reviewed hundreds of public registration statements in that capacity. (Dandridge Report at 1, attached as Exhibit "A"). In his report, Dandridge uses this wealth of experience to describe the way in which the securities industry views the three most commonly-used SEC regulations requiring companies to make a disclosure: Items 103, 401(f) and 303 of Regulation S-K. (*Id.* at 3-10). Dandridge then concludes that, as an experienced lawyer, *he* believes Herley "was given reasonable advice." (*Id.* at 10, 14). In essence, Dandridge's report provides a window into the mind of how a lawyer faced with the same situation as Herley's own counsel would act. This is both admissible and helpful to a jury. *See Bilzerian*, 926 F.2d at 1294-95 (permitting expert testimony regarding "general background on federal securities regulation and the filing requirements of Schedule 13D"); *Gilliand v. Hergert*, 2008 U.S. Dist. LEXIS 51421, at *16 (W.D. Pa. July, 1, 2008) (permitting expert testimony "regarding the cardinal principles and practices among experienced securities practitioners.").

Plaintiffs overlook the teachings of *Berckeley*—a factually similar case involving an expert report being used to defeat scienter.[2] 455 F.3d at 217. There, the Third Circuit <u>admitted</u> expert testimony by an experienced SEC lawyer regarding "securities industry custom" with respect to the disclosure exemption found in Section 4(1) of Regulation S. *Id.*

---

[2] "Scienter" means "intent to deceive, manipulate, or defraud, or at least knowing misconduct." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d, 1450, 1467 (2d Cir. 1996). Likewise, some aspect of the statement must be actually false, and known to be false to the defendant making the promise at the time it was made. *Integrated Res. Real Estate Ltd. P'ship Sec. Litig.*, 850 F. Supp. 1105, 1141 (S.D.N.Y. 1993).

5

at 218. Indeed, the only testimony found to be inadmissible was: (1) "whether Berckeley complied with legal duties [arising] under the federal securities laws"; and (2) whether it was "reasonable for Berckeley to have believed that it was entitled to the Section 4(1) exemption." *Id.* Neither of those opinions are the type of testimony offered by Dandridge.

Notably, Plaintiffs attempt to superimpose upon Dandridge's report the conclusion that "such advice was reasonable because the securities laws purportedly <u>did not impose an obligation</u> on Herley to reveal such information." (Memo at 9) (emphasis added). But Dandridge's report does not state that Herley had an "obligation"—i.e., "duty"—to disclose the type of information at issue in this case, or that it was "reasonable" for Herley to believe it was "entitled" to remain silent, as in *Berckeley*. (Ex. A, p. 10, 14). Importantly, Dandridge's Report does <u>not</u> ultimately conclude that Herley complied, or failed to comply, with the law. (*Id.*); *see also* Part II.C *infra*. Rather, the true focus of the report is on the reasonable advice given by Herley's *actual counsel*. (*See* Dep. Trans., A. Dandridge at 85:22-86:3, attached as Exhibit "B"). The following exchange between Plaintiffs' counsel and Dandridge exemplifies this point:

> **Q:** Were you ever asked to opine on the reasonableness of any actions taken by Herley?
>
> **A: No.**

*Id.* at 71:20-22 (emphasis added). Plaintiffs' self-serving mischaracterizations aside, the *actual* contents of Dandridge's report and testimony are entirely admissible.

    *1.*    *Cases Cited by Plaintiffs Are Inapplicable And Do Not Involve Securities Law.*

Plaintiffs contend that Dandridge's opinion should be excluded because courts have rejected opinions based on the "reasonableness of counsel's advice." (Memo at. 11). In

6

support of this contention, Plaintiffs rely primarily on two cases: (1) *Stobie Creek Invest., LLC v. United States*, 81 Fed. Cl. 358 (2008); and (2) *Tigers Eye Trading, LLC v. Comm'r of Internal Revenue*, 2009 Tax Ct. Memo LEXIS 118 (U.S. Tax Ct May 27, 2009). However, none of those cases address the specific issue presented here—i.e., the admissibility of expert testimony to negate "scienter" under section 10(b) or to prove "good faith" under 20(a). Indeed, neither *Stobie Creek* nor *Tigers Eye Trading* deal with securities law at all—let alone the specific sections at issue here. Instead, each case involves the "reasonable cause defense" available under 26 U.S.C. § 6664(c)(1) of the tax code, whereby a taxpayer may avoid "accuracy related penalties" by alleging "good faith" reliance on external factors. *Tigers Eye Trading*, 2009 Tax Ct. Memo LEXIS 118, at *39; *Stobie*, 81 Fed. Cl. at 3. Such reliance could be shown by, among other things, an "honest misunderstanding of fact or law," "[r]eliance on an information return" or "on the advice of a professional tax advisor." *See* 26 C.F.R. 1.6664-4 (2003). Indeed, such reliance need not even come from an attorney for this exception to apply. *Id.* As a result, the cases are inapplicable to the issues before this Court.

Moreover, at least one court faced with this exception has <u>admitted</u> expert testimony by an attorney regarding whether a taxpayer could reasonably rely on an opinion letter prepared by another law firm. In *Klamath Strategic Inv. Fund, LLC v. United States*, 472 F. Supp. 2d 885, 901 (E.D. Tex. 2007), *aff'd*, 568 F.3d 537, 548 (5th Cir. 2009), the defendant sought to introduce the expert opinion of a tax lawyer with over 40 years of experience as to whether he (the taxpayer) reasonably relied on the advice of his counsel. Specifically, the expert concluded that counsel's "opinions complied with standards common to the profession and with administrative standards established by Treasury Circular 230, which

7

addresses conduct of practitioners who provide tax opinions." *Id.* at 905. Accordingly, the court admitted such testimony and ultimately accepted the plaintiff's proffered "good faith" defense. *Id.*

> 2. *Dandridge Is Not Opining on the Ultimate Issue in This Case Because Herley Has Not Been Charged With Violating the Regulations Contained in the Report.*

Plaintiffs accuse Defendants of attempting to introduce evidence "on an ultimate issue: the legal criteria regarding a public company's duty to disclosure pre-indictment government investigations and whether counsel's advice was reasonable in light of such criteria." (Memo at 10). As previously stated, however, Herley has not been charged with violating Items 103, 401(f) and 303 of SEC Regulation S-K—the only statutes referenced in the report. Accordingly, any opinions by Dandridge regarding such regulations do not go the "ultimate issue" in this case. *United States v. Duncan*, 42 F.3d 91, 102 (2d Cir. 1994) (expert does not tell jury what conclusion to reach by stating that defendant violated statutes which it is not charged with violating); *cf. Casper v. SMG*, 389 F. Supp. 2d 618, 622 (D.N.J. 2005) (excluding expert opinion where testimony "ha[d] a *direct bearing* on the legal determination" the court may be asked to later make) (emphasis added). Plaintiffs are also not prejudiced the by instant report for the same reason. *See McDade*, 1995 U.S. Dist. LEXIS 11640, at *9-10 (legal opinions are impermissibly prejudicial only where the expert "expresse[s] a direct opinion on the central legal issue for the jury to determine."). This is not to say that such testimony is not still "relevant"—it clearly is. *See* Part II *infra*.

Indeed, the fact that Dandridge made a similar finding as Herley's counsel merely <u>implies</u> the propriety of that prior advice—as well as Herley's reliance thereupon. *Leo*, 941 F.2d at 197 ("To the extent that it was limited to an explanation of business custom, [expert]

8

testimony was relevant both to explain the practice in the industry . . . and to establish what someone with Leo's extended background in the industry probably would have known."). This fact alone does not *per se* establish Herley's reliance defense, however—Dandridge's report leaves that task for the fact-finder. *See Berckeley*, 455 F.3d at 219; *see also Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d. Cir. 1994) (proof of good faith reliance on counsel is merely "one factor for consideration" when determining whether a defendant acted with scienter).

## II. DANDRIDGE'S OPINIONS ARE ADMISSIBLE BECAUSE THEY ARE DIRECTLY RELEVANT TO THE ISSUES IN THIS CASE.

### A. The Report is Relevant to Herley and Blatt's Scienter Under Section 10(b) and to the Individual Defendants' Statutory Good Faith Defense Under Section 20(a).

Plaintiffs' second contention is that the Report "does not address the actual issues implicated in this case." (Memo at 13). As shown below, this argument requires even less consideration that the first. Indeed, whether industry custom would consider the advice Herley received to be "reasonable" is relevant to at least two separate causes of action alleged in this case. Specifically, expert testimony by a renowned securities lawyer as to what advice would have been "reasonable" will be useful to the jury in deciding: (1) the effect of that advice on Herley and Blatt's "scienter"; and (2) the individual defendant's "good faith." *Lozano v. City of Hazelton*, 2007 U.S. Dist. LEXIS 13295, at *13-14 (M.D. Pa. Feb. 27, 2007) (expert may be used to explain intricacies of the law and to "help unsnarl complicated factual issues").

Section 10(b) has a requirement of scienter. Moreover, "[g]ood faith reliance on the advice of an accountant or an attorney has been recognized as a viable defense to scienter in securities fraud cases." *See, e.g., S.E.C. v. Meltzer*, 440 F. Supp. 2d 179, 189 (E.D.N.Y. 2006)

9

(citing *S.E.C. v. Caserta*, 75 F. Supp. 2d 79, 94 (E.D.N.Y. 1999)). Likewise, section 20(a), which imposes liability on one who controls a violator of the securities laws, provides an exception if the actor can show he acted in "good faith." *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 889 (3d Cir. 1975); *see also* 15 U.S.C. § 78t (stating a defendant cannot be held liable under section 20(a) if "the controlling person acted in good faith[.]"). There can be no doubt that whether the advice Herley received from its counsel was "reasonable" would factor into whether Herely and Blatt acted with scienter, as well as whether such reliance on the part of the individual defendants was undertaken in "good faith." *S.E.C. v. Snyder*, 2008 U.S. App. LEXIS 19835, at *38 (5th Cir. Sept. 16, 2008) (stating reliance on advice of counsel "is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter."); *Newton v. Merrill, Lynch, Pierce, Fenner & Smith*, 135 F.3d 266, 273 (3d Cir. 1998) (defendants could offer evidence of industry custom and practice to demonstrate that they had not acted with the requisite scienter).[3]

### B. Plaintiffs Improperly Focus on Whether Dandridge Reviewed the Specific Advice Given by Counsel.

There is no need for Dandridge to identify *who* provided the legal advice given to Herley; or for that matter, the specific details *of* that advice. Indeed, this argument is nothing more than a transparent attempt by Plaintiffs to distract this Court from the real issues in this case. Because Dandridge's opinion will help the jury in determining whether, based on the aforementioned advice of counsel, Herley and Blatt acted with scienter, and whether the

---

[3] Plaintiffs other argument that "defendants did not raise reliance on the advice of counsel as an affirmative defense" can be dismissed out of hand. (*See* Memo at 1, 12). Defendants did not need to raise this defense in its Answer. *See Snyder*, 2008 U.S. App. LEXIS 19835, at *38 (5th Cir. Sept. 16, 2008) ("[R]eliance on the advice of counsel need not be a formal defense") (quoting *Howard v. S.E.C.*, 376 F.3d 1136, 1147 (D.C. Cir. 2004)). This is simply a matter of black-letter law.

10

individual defendants acted with good faith, such testimony is clearly relevant to this case. *See Snyder*, 2008 U.S. App. LEXIS 19835, at *38. Accordingly, the exact contents and source of the advice have no bearing on the report's admissibility. *See Cantor v. Perelman*, 2006 U.S. Dist. LEXIS 86329, at *19 (D. Del. Nov. 30, 2006). Indeed, Plaintiff's argument goes to the weight of the expert opinion, not its admissibility—and is thus premature.[4] *Id.*

### C. Plaintiffs Misconstrue the Scope of the Report.

As a last-ditch attempt to discredit Dandridge which is no more than a throw-away, Plaintiffs complain that the "report is virtually devoid of any analysis of whether the . . . statements Herley volunteered in its corporate filings triggered an obligation to disclose the existence of the Government's criminal investigation and the subject matter of that investigation." (Memo at 13) (emphasis added). The reason for this omission is simple: a statement regarding such an "obligation"—i.e., legal duty—would constitute the very type of improper "legal opinion" Plaintiffs accuse Dandridge of making. *See Berckeley*, 455 F.3d at 197 (excluding testimony regarding "legal duties from the various SEC pronouncements"); *Leo*, 941 F.2d at 197. This distinction highlights the flaws in Plaintiffs' position with respect to the remainder of Dandridge's report.

*       *       *

---

[4] Likewise, Plaintiffs other allegation that there is a different legal standard under section 10(b), as compared to section 14, is also premature, and goes to the weight, not admissibility, of the report. (Memo at 5 n.4). The same can be said of Plaintiffs attempt to dispute Dandridge's reading of *In re Par Pharm. Sec. Litig.*, 733 F. Supp. 688, 677-78 (S.D.N.Y. 1990) and *Ballan v. Wilfred Am. Ed. Corp.*, 720 F. Supp. 241 (E.D.N.Y. 1989). (*Id.* at 14 n.11).

11

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion in Limine to Preclude the Report and Testimony of Defendants' Expert Witness Albert S. Dandridge, III should be denied.

**BLANK ROME LLP**

*s/ James T. Smith*
JAMES T. SMITH
EVAN H. LECHTMAN
NAKUL KRISHNAKUMAR
One Logan Square
Philadelphia, PA  19103
Tel:  (215) 569-5500
Fax:  (215) 832-5500

*Attorneys for Defendants*

Dated: November 16, 2009