UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE HERLEY INDUSTRIES INC.
SECURITIES LITIGATION

No. 06-CV-2596 (JRS)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE THE OPINION OF PLAINTIFFS' EXPERT
PATRICK A. McGEEHIN**

**KIRBY McINERNEY LLP**
Attorneys for Lead Plaintiff
Ira M. Press
Andrew M. McNeela
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 371 - 6600

# TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.    Legal Standard Governing Admission of Expert Testimony . . . . . . . . . . . . . . . . . 3

     B.    Permissible Scope of Expert Testimony  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.    Defendants' Arguments to Exclude the Testimony of Patrick McGeehin
          are Meritless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          1.    Mr. McGeehin Opined, in Part, as To Whether Certain of Herley's
               Conduct Was Not in Accord With the Defense Industry's Custom
               and Practice as Informed by the FARs . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          2.    Mr. McGeehin's Testimony Concerns an Ancillary Matter, Not an
               Ultimate Legal Issue Regarding the Securities Laws . . . . . . . . . . . . . . . . 10

          3.    In the Event the Court Determines that Certain of Mr. McGeehin's
               Opinions Are Improper, the Court, In the Exercise of Its Broad
               Discretion, Should Not Preclude Mr. McGeehin's Testimony in
               Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

*Cases*

*Allstate Prop. & Cas. Ins. Co. v. Vargas*,
    No, 06-3368, 2008 WL 4104542 (E.D. Pa. Aug. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . 4

*Amakua Dev. LLC v. Warner*,
    No. 05-3082, 2007 WL 2028186 (N.D. Ill. July 10, 2007) . . . . . . . . . . . . . . . . . . . . . 5, 8

*American Home Assurance Co. v. Fed. Ins. Co.*,
    No. 06-3237, 2007 WL 1459816 (W.D. Mo. May 15, 2007) . . . . . . . . . . . . . . . . . . . . 4

*American Nat'l Fire Ins. Co. v. Mirasco, Inc.*,
    265 F. Supp. 2d 240 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Berckeley Invest. Group, LTD v. Colkitt*
    455 F.3d 195 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Burkhart v. Washington Metro. Area Transit Auth.*,
    112 F.3d 1207 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

*Cantor v. Perelman*,
    No. 97-586, 2006 WL 3462596 (D. Del. Nov. 30, 2006) . . . . . . . . . . . . . . . . . . . 7, 9, 15

*Coregis Ins. Co. v. City of Harrisburg*,
    No. 03-920, 2005 US Dist. LEXIS (M.D. Pa. Nov. 8, 2005) . . . . . . . . . . . . . . . . . . . . 11

*Cowan v. Treetop Enters., Inc.*,
    120 F. Supp. 2d 672 (M.D. Tenn. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Darensberg v. Metro. Transp. Comm'n*,
    No. 05-1597, 2008 WL 4277656 (N.D. Cal. Sept. 15, 2008) . . . . . . . . . . . . . . . . . . 4, 11

*Envtl. Def. Fund, Inc. v. Lamphier*,
    714 F.2d 331 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Fiataruolo v. United States*,
    8 F.3d 930 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 12-14

*First Nat'l State Bank of New Jersey v. Reliance Elec. Co.*,
    668 F.2d 725 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*,
    410 F. Supp. 2d 417 (W.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 11-13

*Good Shepherd Manor Found. v. City of Momence*,
    323 F.3d 557 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 12

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 11

*Hill v. Reederfei F. Laeisz G.M.B.H., Rostock*,
    435 F.3d 404 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Fosamax Prods. Liab. Litig.*,
    No. 06 MD 1789, 2009 WL 2222910 (S.D.N.Y. July 27, 2009) . . . . . . . . . . . . . . 6, 9, 12

*In re Initial Public Offering Sec. Litig.*,
    174 F. Supp. 2d 61 (S.D.N.Y 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

*In re Ocean Bank*,
    481 F. Supp. 2d 892 (N.D. Ill. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Karns v. Emerson Elec. Co.*,
    817 F. 2d 1452 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Lewis v. New Mexico Dep't of Health*,
    275 F. Supp. 2d 1319 (D.N.M. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Marx & Co. v. The Diner's Club, Inc.*,
    550 F.2d 505 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mukhtar v. Cal. State Univ. v. Hayward*,
    299 F.3d 1053 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Nieves-Villanueva v. Soto-Rivera*,
    133 F.3d 92 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sil-Flo, Inc. v. SFHC, Inc.*,
    917 F.2d 1507 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Specht v. Jensen*,
    853 F.2d 805 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 13

*Tubar v. Clift*,
    No. 05-1154, 2009 WL 1325952 (W.D. Wa. May 12, 2009) . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Barbee*,
    968 F.2d 1026 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Barnette*,
    800 F.2d 1558 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Boney*,
    977 F.2d 624 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Caputo*,
    517 F.3d 935 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Fennell*,
    381 F. Supp. 2d 1312 (D.N.M. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Fogg*,
    652 F.2d 551 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Gold*,
    743 F.2d 800 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*United States v. Leo*,
    941 F.2d 181 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 10

*United States v. Oles*,
    994 F.2d 1519 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

### Other Authorities

29 Charles Alan Wright & Victor James Gold,
    *Federal Practice and Procedure*, § 6264 (3d ed. 2009) . . . . . . . . . . . . . . . . . . . . . . . 6, 13

**Preliminary Statement**

Plaintiffs in the above-captioned securities fraud class action respectfully submit this memorandum in opposition to defendants' motion to exclude the report and testimony of plaintiffs' government contracting expert, Mr. Patrick McGeehin, as impermissible legal opinion concerning the Truth in Negotiations Act ("TINA"), and its implementing provisions in the Federal Acquisition Regulations ("FARs"). Defendants' motion should be denied.[1]

First, assuming that portions of Mr. McGeehin's report analyze the FARs in the context of this action (which defendants maintain is impermissible), aspects of Mr. McGeehin's testimony are clearly admissible. An expert can: (i) refer to the law without rendering his opinion inadmissible, and (ii) testify regarding industry custom and practice regarding government contracting, as informed by TINA and the FARs. The primary purpose for which plaintiffs intend to call Mr. McGeehin is to testify regarding the defense industry's government contracting custom and practice at the time Herley negotiated the Navy power head contracts, which were the subject of Herley's guilty plea to two felony counts of obstruction of a federal audit.

Second, Mr. McGeehin's opinions regarding whether specific instances of Herley's conduct comported with the FARs are permissible because they involve an *ancillary* legal matter, and not the ultimate legal issue in this case, *i.e.* whether Herley violated the securities laws.[2] Several courts have held that expert opinions embracing legal analysis of ancillary legal issues are admissible.

---

[1] Notably, defendants' government contracting expert, Professor Ralph C. Nash, Jr., offers the exact same analysis that defendants challenge here. (*See* Declaration of Ira M. Press ("Press Declaration") Ex. A). Plaintiffs have not moved to exclude the opinion of Professor Nash.

[2] This stands in stark contrast to the opinion of defendants' expert Albert S. Dandridge III, who opined that the securities laws did not require certain disclosures, *i.e.* Herley did not violate the securities laws by omitting certain information. Plaintiffs have moved to exclude the report and testimony of Mr. Dandridge.

Indeed, those cases holding that expert analysis of legal issues is inadmissible speak to an entirely different context than the one presented here: namely, where the opinion concerns the ultimate legal issue, *i.e.* an opinion on the law that is outcome determinative. The instant action is not brought under the FARs, and Mr. McGeehin's opinions do not concern the securities laws. Thus, his proposed testimony would not be outcome determinative.

Finally, to the extent the Court determines that portions of Mr. McGeehin's report and/or testimony are inadmissible, it should, in the exercise of its broad discretion, not preclude Mr. McGeehin's testimony in its totality, but permit him to testify regarding the defense industry's customs and practices with respect to government contracting, exclusive of any discussion of the legal obligations imposed by the FARs or Herley's compliance therewith.

### Statement of Facts

Mr. McGeehin is Certified Public Accountant with an M.B.A. in procurement and contracting, with extensive experience regarding government contracting in the defense industry. (*See* Press Dec. Ex. B at 1 & Attachment 1 (annexing Expert Report of Patrick McGeehin)). Among other engagements, Mr. McGeehin routinely advises companies with respect to their disclosure obligations in connection with the government contracting process. (*See* Press Dec. Ex. C at 70-73). Mr. McGeehin has also testified on FARs practices on numerous occasions. (*See id.* at 34-58).

Mr. McGeehin, based on his experience, examined, *inter alia*, whether certain actions taken by Herley were appropriate pricing functions within the defense industry, *i.e.* comported with industry custom and practice (*see* Press Dec. Ex. C at 33:11-16, 101:12-19; 177:23-178:2; *see also*

2

*id.* Ex. E),[3] and, if not, (ii) whether such deviations were tantamount to violations of the FARs, (*see* Press Dec. Ex. C at 33:23-34:4; *see also id.* Ex. E).

To this end, Mr. McGeehin, in his report, provided (i) a general overview of the FARs, (ii) followed by generic examples of the types of information that, in his experience, a government contractor would typically provide during the negotiation process, and which would likely constitute noncompliance with the FARs if not disclosed, (iii) followed by a detailed analysis of specific information within Herley's possession that, in his experience within the government contracting industry, is the type of information typically disclosed to the government, and which would likely constitute noncompliance with the FARs if not disclosed.  (*See* Press Dec. Ex. B).  In opining on specific instances of Herley's conduct, Mr. McGeehin and his staff culled supporting documentation supporting each of his conclusions.   (*See* Press Dec. Ex. C at 98-101).

## ARGUMENT

### A.    Legal Standard Governing Admission of Expert Testimony

"[T]he permissible scope of expert testimony is quite broad, and District Courts are vested with broad discretion in making admissibility determinations."  *Hill v. Reederfei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006); *see also United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) ("The trial court has wide discretion in determining whether expert testimony will assist the trier of fact.").  "[D]oubts about the usefulness of expert testimony should generally be resolved in

---

[3] Mr. McGeehin also testified that, consistent with his current opinions, when discussing whether a company's conduct comported with the FARs, his baseline determination is  whether such conduct deviated from industry practice.  (*See, e.g.,* Press Dec. Ex. C at 36:18-23, 40:2-7; *see also id.* Ex. E).  In this connection, Mr. McGeehin testified that it was not his intention to render a legal conclusion as to whether Herley's conduct, absent reference to industry practice, violated the FARs.  (*See* Press Dec. Ex. C at 33:23-34:4; *see also id.* Ex. E).

favor of admissibility." *Lewis v. New Mexico Dep't of Health*, 275 F. Supp. 2d 1319, 1331 (D.N.M. 2003) (citing *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1517 (10th Cir. 1990)).

**B.    Permissible Scope of Expert Testimony**

Pursuant to Rules 702 and 704 of the Federal Rules of Evidence, expert witnesses are generally precluded from offering a legal conclusion on an *ultimate issue* of law. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("'an expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law'") (quoting *Mukhtar v. Cal. State Univ. v. Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)); *see also Berckeley Inv. Group, LTD. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (expert should not testify on "the governing law of the case"); *Allstate Prop. & Cas. Ins. Co. v. Vargas*, No, 06-3368, 2008 WL 4104542, at *6 (E.D. Pa. Aug. 29, 2008) (precluding expert testimony "as to the ultimate legal issue in this matter: whether defendant has presented clear and convincing proof to support a fact-finder's conclusion that [plaintiff's] conduct constitutes bad faith"); *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 422 (W.D. Pa. 2006) ("a expert may not give an opinion as to the ultimate legal conclusion").[4]

"There is a distinction between testimony on ultimate issues of fact and ultimate issues of

---

[4] *See also Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (in action alleging violations of Fair Housing Act Amendments ("FHAA"), excluding testimony of expert that city's actions violated FHAA, and noting that "district court correctly ruled that expert testimony as to legal conclusions *that will determine the outcome of the case* is inadmissible") (emphasis added); *Darensberg v. Metro. Transp. Comm'n*, No. 05-1597, 2008 WL 4277656, at *2 (N.D. Cal. Sept. 15, 2008) ("an expert may not provide testimony on an ultimate legal issue"); *American Home Assurance Co. v. Fed. Ins. Co.*, No. 06-3237, 2007 WL 1459816, at *3 (W.D. Mo. 2007) (excluding expert's legal conclusions as to how settlement should be allocated between plaintiffs, "which is the ultimate issue in the case"); *In re Initial Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 65-67 (S.D.N.Y 2001) (excluding expert legal analysis of whether, on recusal motion, governing statute required recusal and noting that an expert may "not opine on *the ultimate legal conclusion*") (emphasis added).

law." *United States v. Barbee*, 968 F.2d 1026, 1031 (10th Cir. 1992) (citing Fed. R. Evid. 704). This

distinction recognizes that while testimony regarding "the ultimate factual questions aids the jury

in reaching a verdict," opinions on ultimate legal issues – *i.e.,* telling the jury how to decide the case

– does not. *Id.* (quoting *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988)); *see also id.* (holding

that drug enforcement agent's testimony that defendants were engaged in "drug trafficking was an

opinion regarding a factual issue").

   Nonetheless, "'a witness may refer to the law in expressing an opinion without that reference

rendering the testimony inadmissible.'" *United States v. Oles*, 994 F.2d 1519, 1523 (10th Cir. 1993)

(quoting *Specht*, 853 F.2d at 810). Moreover, an expert may offer a discussion of relevant facts

"couched in legal terms," and several courts have held that an expert, under certain circumstances,

may offer narrowly tailored opinions on the legal implications of specific questions of fact:

> Indeed, a witness may properly be called upon to aid the jury in understanding the
> facts in evidence even though reference to those facts is couched in legal terms. *For
> example, we have previously held that a court may permit an expert to testify that a
> certain weapon had to be registered with the Bureau of Alcohol, Tobacco and
> Firearms. In that case, however the witness did not invade the court's authority by
> discoursing broadly over the entire range of the applicable law. Rather, the expert's
> opinion focused on a specific question of fact.*

*Amakua Dev. LLC v. Warner*, No. 05-3082, 2007 WL 2028186, at *10 (N.D. Ill. July 10, 2007)

(quoting *Specht*, 853 F. 2d at 809 ) (emphasis added and internal citation omitted); *see also Burkhart*

*v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) ("In other words,

an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal

standard at issue was satisfied . . . ."); *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993)

("Experts may testify on questions of fact *as well as mixed questions of fact and law.*") (emphasis

added); *American Nat'l Fire Ins. Co. v. Mirasco, Inc.*, 265 F. Supp. 2d 240, 252 (S.D.N.Y. 2003)

("[A]n expert's testimony on issues of law is inadmissible. *An expert may, however, include factual conclusions and opinions embodying legal conclusions that encroach upon the court's duty to instruct upon the law*.") (emphasis added & internal citation omitted).

Courts generally find such narrowly tailored discussions of relevant facts couched in legal terms admissible where the expert's opinion involves a complex regulatory or legal framework. *See* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure*, § 6264 n.36 (3d ed. 2009) (in section entitled "application of complex standard," noting that "courts seem more open to the admission of expert legal opinions *where the subject is the application of some complex regulatory or legal standard to a specific factual background*") (emphasis added); *Fiataruolo*, 8 F.3d at 942 (trial court did not err in permitting taxpayer's expert to testify that taxpayer was not responsible under tax law for unpaid withholding taxes, where expert provided a detailed factual description of taxpayer's payroll procedures and accounting statements prior to opining on whether those procedures triggered an obligation under applicable tax law, and, as a consequence, the expert's testimony "gave the jury helpful information beyond a simple statement on how its verdict should read").[5]

----

[5] *See also Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 101 (1st Cir. 1997) (acknowledging that there are instances in "highly complex and technical matters where a trial judge, utilizing limited and controlled mechanisms, and as a matter of trial management, permits some [expert] testimony seemingly at odds with the general rule"); *United States v. Barnette*, 800 F.2d 1558, 1568 (11th Cir. 1986) (trial court did not err in admitting the testimony of an IRS agent as to the income-tax-law implications of defendant's activities) (superceded by statute on other grounds); *United States v. Gold*, 743 F.2d 800, 817 (11th Cir. 1984) (trial court did not err in admitting expert testimony concerning whether claims were eligible for Medicare reimbursement), *cert. denied* 469 U.S. 1217 (1985) (superceded by rule on other grounds); *Envtl. Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 340 (4th Cir. 1983) (trial court had discretion to permit expert to testify as to application of state environmental statutes and regulations); *In re Fosamax Prods. Liab. Litig.*, __, F. Supp. 2d __, No. 06-MD-1789, 2009 WL 2222910, at *23 (S.D.N.Y. July 27, 2009) (denying motion to preclude expert from testifying "about general FDA regulatory requirements and procedures or offering an opinion as to Merck's compliance therewith," because "[a] lay jury cannot be expected to understand the complex regulatory framework that informs the standard of care in the pharmaceutical industry); *United*

Finally, an expert may permissibly testify as to industry custom and practice, as informed by the governing statutory or regulatory framework, and discuss a party's conduct within that framework. *See Leo*, 941 F.2d at 196-97; *First Nat'l State Bank of New Jersey v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981); *see also Cantor v. Perelman*, No. 97-586, 2006 WL 3462596, at *6 (D. Del. Nov. 30, 2006) (an expert may "testify, based on experience in the industry, as to how a company would operate under the law").

**C.    Defendants' Arguments to Exclude the Testimony of Patrick McGeehin are Meritless**

> **1.    Mr. McGeehin Opined, in Part, as To Whether Certain of Herley's Conduct Was Not in Accord With the Defense Industry's Custom and Practice as Informed by the FARs**

As Mr. McGeehin explained at his deposition, he does not purport to render a legal opinion on TINA or the FARs in a vacuum, but rather his opinion embraced (i) whether Herley's conduct comported with industry custom and practice as it relates to government contracting, and (ii) whether, in turn, such deviation constituted noncompliance with the FARs. (*See* Press Dec. Ex. C at 33:11-34:4, 101:12-19, 177:23-178:2; *see also id.* Ex. E).

Defendants concede that the defense industry's customs and practices are the proper subject of expert testimony. *See Leo*, 941 F.2d at 196; *First Nat'l State Bank*, 668 F.2d at 731. Moreover, given that such industry custom and practices arose under the framework of TINA and its implementing regulations in the FARs, it is both entirely reasonable and permissible that Mr. McGeehin makes reference to such laws and regulations in rendering his opinions. *See Leo*, 941

---

*States v. Fennell*, 381 F. Supp. 2d 1312, 1315-16 (D.N.M. 2005) (admitting expert testimony regarding ownership of land, which included analysis of applicable treaty and Presidential Proclamation, over defendants objection in trespass action).

F.2d at 196 (permitting government contracting expert to testify regarding "custom and practice in the defense industry *governed by the* [Armed Services Procurement Act of 1947]," including that "contractor's generally provided updated cost and pricing data to the government during contract negotiations") (emphasis added); *Amakua Dev. Corp. LLC v. Warner*, No. 05-3082, 2007 WL 2028186, at *12 (N.D. Ill. July 10, 2007) ("The fact that [the expert's] factual conclusions are structured so as to conform to applicable underlying [legal] principles . . . is not exceptional; if the factual assertions were unmoored from the underlying legal framework, they would be potentially irrelevant and/or misleading.").

Thus, despite defendants arguments to the contrary, it is well-settled that "'a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.'" *Oles*, 994 F.2d at 1523 (quoting *Specht*, 853 F.2d at 809); *Gallatin Fuels, Inc.*, 410 F. Supp. 2d at 421 ("the mere fact that [the expert's] testimony may rely in part on his understanding of [certain state insurance laws] does not render his testimony inadmissible"); *see also Hangarter*, 373 F.3d at 1017 (same); *Amakua Dev. Corp. LLC,* 2007 WL 2028186, at *10 (same). "Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht,* 853 F. 2d at 809.

Nor do defendant's dispute that the FARs: (1) constitute a complex regulatory regime, and (2) that the jury would be benefit from a discussion the defense industry's custom and practice *vis a vis* that regime.  (*See* Press Dec. Ex. D at 34:9-20 (testimony of Charles Pourciau, Herley's corporate compliance and ethics officer, that regulations governing government contracting are "complex" and that it made sense for a company of Herley's size to have experienced persons on staff); *id.* at 65-66 (Mr. Pourciau's testimony that Admirals Moore and Walker – both directors of

8

Herley Industries – considered government contracting regulations "very complex"); *In re Fosamax Prods. Liab. Litig.* 2009 WL 2222910, at *23 ("A lay jury cannot be expected to understand the complex regulatory framework that informs the standard of care in the pharmaceutical industry. [Plaintiffs' experts'] assessment of the reasonableness of Merck's conduct in light of her experience and her understanding of FDA regulations will be helpful to the jury.").

Accordingly, this Court should conclude that Mr. McGeehin can permissibly testify regarding the defense industry's custom and practice – as informed by TINA and the FARs – regarding a contractor's submission of data to the government during negotiations.

The admittedly more difficult issue concerns whether Mr. McGeehin can permissibly testify as to whether Herley's conduct, in the context of industry custom and practice, also rose to the level of noncompliance with the FARs themselves. As the United States Court of Appeals for the Third Circuit has observed, "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *Berckeley Invest. Group, LTD.*, 455 F.3d at 218.[6]

Although expert opinions that embrace legal analysis are generally disfavored, Mr. McGeehin's opinions regarding specific instances of Herley's non-compliance with the FARs are nonetheless admissible here as an exception to the general rule, because they involve an ancillary legal matter – Herley's compliance with the FARs – and not the ultimate legal issue in this case,

_____

[6] Whether the failure to disclose such information comported with industry custom and practices under the circumstances and without reference to the legal obligations imposed by the FARs is, in and of itself, admissible. *See Cantor*, 2006 WL 3462596, at *6 ("the Third Circuit has held that it is permissible for an expert to testify, based on experience in the industry, *as to how a company would operate under the law*") (emphasis added).

Herley's compliance with the securities laws. *See* Point C.2, *infra*. However, if the Court were to

conclude that Mr. McGeehin's opinions on this score stray too far into forbidden territory, the Court

should not preclude Mr. McGeehin's testimony in total. *See* Point C.3, *infra*. Rather, in the exercise

of its broad discretion, the Court should permit Mr. McGeehin to testify as to the defense industry's

custom and practice with respect to government contracting and whether Herley complied therewith,

without testifying as to the legal obligations arising under TINA and the FARs or whether Herley

met such obligations. *See id*.[7]

## 2.    Mr. McGeehin's Testimony Concerns an Ancillary Matter, Not an Ultimate Legal Issue Regarding the Securities Laws

Defendants' motion ignores that the ultimate legal issue in this case is whether defendants'

violated the securities law, *not* whether defendants' conduct ran afoul of government contracting

regulations. This distinction is critical because courts have permitted experts to opine on the

obligations imposed by laws and regulations *ancillary* to those directly governing the case.[8] As the

---

[7] Defendants are incorrect that Mr. McGeehin's opinion that an experienced government contractor, such as Herley, would have been aware of its obligations under the FARs is inadmissible. *See Leo*, 941 F.2d at 197 (in action involving government contracting fraud, expert opinion regarding "customs and practices within the defense industry would be helpful to the jury in understanding what someone with [defendant's] experience in that industry was likely to have known").

[8] The Third Circuit's decisions in *Berckeley, First Nat'l State Bank of New Jersey*, and *Leo*, did not address the issue here: whether a expert can offer narrowly tailored opinions anchored to the factual record regarding whether a party ran afoul of certain complex regulatory requirements that are ancillary to the ultimate legal issue. Indeed, the cases defendants cite in support of their motion *in limine* involves instances – unlike here – where the expert purported to opine on the statute or regulation under which the action was brought, and not an ancillary issue. *See, e.g., Berckeley*, 455 F.3d at 218 (in action alleging violations of federal securities laws, expert could not opine on whether defendant complied with legal duties arising under such laws); *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (in prosecution for sale of misbranded medical devices that were unapproved by the FDA, excluding expert opinion as to whether device was misbranded under the Food Drug and Cosmetic Act and associated regulations); *Good Shepherd Manor Found. v. City Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (in action alleging violations of Fair Housing Act Amendments ("FHAA"), excluding testimony of expert that city's actions violated FHAA, and noting that "district court correctly ruled that expert testimony as to legal conclusions *that will determine the*

District Court for the Western District of Pennsylvania explained:

> *Defendant next argues that it is inappropriate for [plaintiff's expert] to testify as to his opinion on defendant's violations of various insurance statutes*, including Pennsylvania's Unfair Insurance Practice Act ("UIPA") and the Unfair Claims Settlement Practices ("USCP") [and] regulations promulgated thereunder, as support for his opinion that defendant had acted in bad faith. I disagree. As an initial matter, the mere fact that [the expert's] testimony may rely in part on his understanding of the UIPA or USCP does not render his testimony inadmissible. *None of these statutory provisions or regulations are directly at issue in this case, and [the expert's] references to the same are ancillary to the ultimate issue of bad faith*. Furthermore, whether or not [defendant] complied with applicable insurance statutes or regulations may be relevant to whether [defendant] acted reasonably . . . ."

*Gallatin Fuels, Inc.*, 410 F. Supp. 2d at 421 (emphasis added internal citations omitted); *Tubar v. Clift*, No. 05-1154, 2009 WL 1325952, at *4 (W.D. Wa. May 12, 2009) (expert testimony that involved discussion of legal terms permissible where it concerned matter ancillary to ultimate issue); *Darensberg v. Metro. Transp. Comm'n*, No. 05-1597, 2008 WL 4277656, at *2 (N.D. Cal. Sept. 12, 2008) (expert opinion that addressed laws applicable to the defendant, but that did not offer an ultimate legal conclusion, permissible).

Similarly, in *Hangartner*, the United States Court of Appeals for the Ninth Circuit observed:

Although [the expert's] testimony that Defendants departed from insurance industry norms relied in part on his understanding of the requirements of state law . . . a

---

*outcome of the case* is inadmissible") (emphasis added); *Burkhart*, 112 F.3d at 1212-13 (in action alleging, *inter alia*, violations of the Americans with Disabilities Act ("ADA"), excluding expert testimony regarding legal requirements of ADA); *Coregis Ins. Co. v. City of Harrisburg*, Civ. A. No. 1:03-CV-920, 2005 US Dist. LEXIS, at *10 (M.D. Pa. Nov. 8, 2005) (excluding expert's testimony in declaratory action regarding insurance coverage where expert "proceeded to address the fundamental legal question before the court: whether [the insurers] are obligated to provide Harrisburg with a defense and indemnity"); *In re Initial Public Offering Sec. Litig.,* 174 F. Supp. 2d at 65-67 (excluding expert legal analysis of whether, on recusal motion, governing statute required recusal and noting that an expert may "not opine on *the ultimate legal conclusion*"); *In re Ocean Bank*, 481 F. Supp. 2d 892, 903 (N.D. Ill. 2007) (in action alleging violations of Fair Credit Reporting Act ("FCRA"), striking portions of expert's testimony regarding requirements of and bank's compliance with FCRA); *Cowan v. Treetop Enters., Inc.*, 120 F. Supp. 2d 672, 684 (M.D. Tenn. 1999) (in action under Fair Labor Standards Act ("FLSA") excluding opinion regarding term that had distinct legal meaning under FLSA regulations).

11

witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. *Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.* [The expert's] *reference to California statutory provisions* – none of which are directly at issue in the case – *were ancillary to the ultimate issue of bad faith.*

373 F.3d at 1016-17 (emphasis added, citation omitted).

Here, Mr. McGeehin's narrow discussion of the ancillary issue of whether Herley disclosed certain required information to the government is not a "conclusion that will determine the outcome of the case," *i.e.*, whether Herley violated the securities laws, *Good Shepherd Manor Found.,* 323 F.3d at 564, and is in accord with numerous court decisions holding that an expert witness may opine on facts that, if found, support a conclusion that the legal standard at issue was or was not satisfied. *See, e.g., Marx & Co., Inc. v. The Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977) ("The expert, for example, may tell the jury whether he thinks the method of [securities] trading was normal . . . ."); *In re Fosamax Prods. Liab. Litig.*, 2009 WL 2222910, at *23 (expert could testify as to FDA regulatory requirements and procedures and defendants' compliance therewith, where complexity of regulations was beyond comprehension of lay jury); *Gallatin*, 410 F. Supp. 2d at 421 (expert could discuss noncompliance with state insurance laws ancillary to ultimate legal issue).[9]

---

[9] *See also Fiataruolo*, 8 F.3d at 942 (permitting taxpayer's expert to testify that taxpayer was not responsible under tax law for unpaid withholding taxes); *United States v. Boney*, 977 F.2d 624, 629 (D.C. Cir. 1992) ("[R]ule 702 does not bar an expert from drawing conclusions in a specified case, including conclusions that the defendant was involved in illegal activity or playing a specific role in illegal activity. The rule does not confine an expert to general statements in the field of his expertise, it does not require that any inferences from the facts in the specific case be left to the jury."); *Karns v. Emerson Elec. Co.*, 817 F. 2d 1452, 1459 (10th Cir. 1987) (holding that district court did not err in admitting expert testimony embracing legal standards where "the facts were of a sufficiently technical nature that expert testimony could be expected to assist the jury" and the expert "explained the bases for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions"); *Gold*, 743 F.2d at 817 (expert could testify as to whether claims were eligible for Medicare reimbursement); *Envtl. Defense Fund, Inc.*, 714 F.2d at 340 (expert could testify regarding application of state environmental statutes and regulations).

Nor did Mr. McGeehin's assertions regarding the FARs constitute "bald legal" conclusions that can rightly be said to invade the province of the Court or to instruct the jury as to what verdict to reach. *See Fiataruolo*, 8 F.3d at 942 (where expert's opinion that defendant was not "a responsible person" under tax laws followed his examination defendants' specific conduct, and was couched in terms of the evidence he reviewed, that opinion "gave the jury helpful information beyond a simple statement on how its verdict should read" and "was not a simple bald assertion of the law and was not intended to invade the province of the trial court"); *see also* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure*, § 6264 (3d ed. 2009) (noting that opinions involving involve legal conclusions are generally precluded where "those opinions tell the jury nothing about the facts"); *id.* at n.35 (noting that courts permit greater latitude "where the subject [of the expert opinion] is the application of some complex regulatory or legal standard to a specific factual background").

Rather, Mr. McGeehin identified discrete instances in which Herley was in possession of information that, in his opinion and based in his experience with the defense industry, normally should have been disclosed to the government. *See Specht*, 853 F. 2d at 809 (noting, for example, that expert could testify as to whether weapon was subject to registration requirement because "the witness did not invade the court's authority by discoursing broadly over the entire range of the applicable law . . . . [but] focused on a specific question of fact.").

Finally, any concern regrading the weight the jury may accord Mr. McGeehin's testimony regarding the FARs is not only tempered by the fact that defendants' have retained an expert to opine on exactly the same issues, but can be accounted for through appropriate jury instructions. *See, e.g.*, *Gallatin.*, 410 F. Supp. 2d at 422 (permitting expert to testify regarding whether defendant complied

13

with state insurance statutes, and noting that "to the extent the danger of prejudice or confusion does exist, such danger may be cured by an appropriate jury instruction"); *see also Fiataruolo*, 8 F.3d at 942 ("Here the trial court also admonished the jury that [the expert's] views [on the tax laws] were 'not binding' . . . . [I]n this case, the instruction adequately protected against the jury's giving undue weight to [the expert's opinion]."); *Karns v. Emerson Elec. Co.*, 817 F. 2d 1452, 1459 (10th Cir. 1987) (admission of expert testimony embracing legal standard permissible where, *inter alia*, district court instructed jury that it was free to entirely disregard the expert's opinion if his reasoning was unsound); *United States v. Fogg*, 652 F.2d 551, 556-57 (5th Cir. 1981) (expert testimony of expert IRS agent and accountant that monies constituted a dividend in tax evasion case was permissible even if it embraced a legal conclusion where the district court "instructed the jury about the weight to be afforded expert testimony").

Accordingly, because: (i) Herley's non-compliance with the FARs is ancillary to the ultimate legal issue in this case – whether Herley violated the securities laws; (ii) and because Mr. McGeehin does not offer his opinions in a vacuum, but focuses instead on discrete conduct by Herley amply supported by a factual record, the Court should conclude that Mr. McGeehin can opine on whether Herley, based on his experience, was obligated under the prevailing regulatory scheme to provide certain information to the government.

### 3. In the Event the Court Determines that Certain of Mr. McGeehin's Opinions Are Improper, the Court, In the Exercise of Its Broad Discretion, Should Not Preclude Mr. McGeehin's Testimony in Total

In the event the Court concludes that Mr. McGeehin's opinions regarding the FARs is inadmissible, the Court should not preclude Mr. McGeehin's testimony in total. Rather, in the exercise of its broad discretion, the Court should permit Mr. McGeehin to testify as to the defense

14

industry's custom and practice with respect to government contracting and whether Herley complied therewith, without testifying as to the legal obligations arising under TINA and the FARs or whether Herley met such obligations. *See, e.g., Cantor v. Perelman*, No. 97-586, 2006 WL 3462596, at *5 (D. Del. Nov. 30, 2006) ("I will not exclude large portions of [plaintiffs' expert's] otherwise admissible testimony on the basis that a few statements in his initial report may address issues of law. I will rely on counsel for Defendants to renew their objection, if [plaintiffs' expert's] testimony at trial strays into the realm of purely legal opinion.").

**Conclusion**

For the foregoing reasons, defendants's motion should be denied.

Dated: November 16, 2009
New York, New York

Respectfully submitted,

**KIRBY McINERNEY LLP**

By: _____/s/_____
Ira M. Press (ipress@kmllp.com)
825 Third Avenue, 16th Floor
New York, New York 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540
*Plaintiffs' Lead Counsel and Counsel for
Lead Plaintiff Galleon Management, L.P.*

Stanley P. Kops (SPK 6328)
LAW OFFICE OF STANLEY P. KOPS
102 Bala Avenue
Bala Cynwyd, PA 19004
(610) 949-9999
*Plaintiffs' Liaison Counsel*

15

Christopher Keller (*pro hac vice*)
Jonathan Gardner (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
*Plaintiffs' Counsel*
*Counsel for Plaintiff Norfolk County*
*Retirement System and Additional*
*Plaintiffs' Counsel*

16