IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | CIVIL ACTION |
| IN RE HERLEY INDUSTRIES INC. | : | |
| SECURITIES LITIGATION | : | No. 06-2596 |
| | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                               **January 15, 2010**

This securities class action involves allegations the plaintiff class purchased stock from Defendant Herley Industries, Inc. (Herley) at inflated prices due to Herley's fraudulent conduct. Galleon Management LP (Galleon) was appointed lead plaintiff more than three years ago, but it has since become clear the now-defunct Galleon can no longer continue in this role. Galleon thus requests permission to withdraw as lead plaintiff.

The remaining class representative, Norfolk County Retirement System (Norfolk), seeks appointment as lead plaintiff. Former lead counsel Kirby McInerney LLP (Kirby) has requested to join Norfolk's counsel, Labaton Sucharow LLP (Labaton), as co-lead counsel. Kirby and Labaton assert this alteration would "serve only the best interest of the class and promote the efficiency of the litigation." Letter of Jonathan Gardner & Ira Press, Dec. 11, 2009, at 2. The Court agrees, and finds no further process is necessary to find a suitable replacement for Galleon. Therefore, Norfolk will be appointed as the new lead plaintiff and Kirby and Labaton shall jointly serve as co-lead counsel**.**

**Facts**

This Court appointed Galleon lead plaintiff on November 14, 2006, finding Galleon was the presumptive lead plaintiff under the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78j(b),

78t (PLSRA).  Pursuant to the PSLRA's statutory requirements, this Court found Galleon timely moved for lead plaintiff status, had the largest financial interest in this matter, and satisfied the requirements of Federal Rule of Civil Procedure 23.  Two other parties filed timely motions to serve as lead plaintiff–Norfolk and Operating Engineers Construction Industry and Miscellaneous Pension Fund (OECI)–but Galleon's alleged loss of more than $2.7 million made it the presumptive lead plaintiff under the PSLRA.  Other than Galleon, the class member with the largest financial loss was Norfolk, which claimed losses of approximately $104,000 during the class period.  OECI alleged a loss of $68,291.34.  Recognizing it was unlikely to be selected as lead plaintiff, OECI  advised this Court its financial loss was lower than Galleon and Norfolk, but noted it would be "ready, willing and able to serve as Lead Plaintiff should the Court reject the lead plaintiff applications of the other movants."  Mem. in Support of the Mot. of OECI for Consolidation 2 (Aug. 31, 2006).

On September 30, 2009, this Court certified a class of all persons or entities who sustained a loss as a result of purchasing or otherwise acquiring Herley common stock from October 1, 2001, to June 14, 2006, inclusive (the Class Period).  At the same time, Galleon and Norfolk were named class representatives.  OECI did not seek to be named a class representative.

Two weeks after the class was certified, Galleon's managing partner, Raj Rajaratnam, was indicted on securities fraud charges stemming from alleged insider trading activity at Galleon.  The indictment is part of the "largest hedge fund insider trading case ever charged, criminally." Statement of U.S. Attorney Preet Barara, U.S. Department of Justice, at 2 (Oct. 16, 2009), available at  http://www.justice.gov/usao/nys/hedgefund/hedgefundinsidertradingremarks101609.pdf.   Not surprisingly, Galleon collapsed soon after news of the prosecution became public.  By October 21, 2009, Galleon had publicly acknowledged it planned to cease operations.  Recognizing its ability to

adequately represent the class was severely damaged, Galleon agreed to withdraw as lead plaintiff[1] and suggested it be replaced by the other class representative, Norfolk. Galleon's chosen lead counsel, Kirby, has requested it be allowed to serve as co-lead counsel, joined by Norfolk's proposed lead counsel, Labaton. Labaton has agreed to this proposal.

## Discussion

As a preliminary matter, the Court must first address whether defendants may challenge the substitution of a lead plaintiff in a securities class action. At the initial appointment stage, defendants are prohibited from challenging the appointment of a lead plaintiff because the PSLRA allows input only from "member[s] of the purported plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nly class members may seek to rebut the presumption [that a party should serve as lead plaintiff], and the court should not permit or consider any arguments by defendants or non-class members."). Precluding arguments from a party whose interests are diametrically opposed to those of the class is logical at the beginning of litigation, when there is little danger of prejudice to the defendant based on the selection of a particular lead plaintiff. *See In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005) (holding a ban on defendants' interference in the appointment of a lead plaintiff "makes sense  because defendants will rarely have the best interests of the class at heart").

This does not, however, end our inquiry when it is not the *appointment* of a lead plaintiff being challenged, but rather the *replacement* of one. While there is no direct authority in this circuit,

---

[1] Galleon does not mention whether it also seeks withdrawal as a class representative. Given the impact of the pending indictment and closure of Galleon's operations, however, Galleon cannot possibly satisfy Rule 23 requirements in its present state. The Court will thus remove Galleon as a class representative as well.

several other courts have asserted–or at least presumed–defendants possess a right to challenge the substitution of a lead plaintiff. *See, e.g.*, *In re Impax Labs., Inc. Sec. Litig.*, No. 04-4802, 2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) (allowing, without discussion, defendants to challenge substitute lead plaintiffs); *In re Terayon Commc'ns Sys., Inc. Sec. Litig.,* No. 00-01967, 2004 WL 413277, at *7 (N.D. Cal. Feb. 23, 2004) (holding courts have an "obligation" to consider defendants' arguments regarding the removal of lead plaintiffs). Other courts, however, have expressed doubt as to whether defendants may lodge a challenge against replacement lead plaintiffs. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121-22 (S.D.N.Y. 2002) ("[D]efendants have *never* lodged any objections to the 'adequacy' of the proposed substitute lead plaintiffs, nor is it even clear whether defendants would be entitled to do so."). Given the potential for prejudice to defendants when lead plaintiffs are substituted after years of litigation, this Court concludes defendants may challenge the replacement of a lead plaintiff. Therefore, because this case has been ongoing for three years and is nearly ready for trial, we will give Defendants an opportunity to be heard on the substitution of Norfolk as lead plaintiff.[2]

In reviewing the merits of plaintiffs' proposal to remove Galleon and appoint Norfolk as lead plaintiff, it is necessary to first decide whether the process to appoint a new lead plaintiff must be

---

[2] Even if Defendants did not oppose the lead plaintiff's replacement, however, the Court may consider the substitution of a lead plaintiff on its own initiative. Courts retain inherent power to reconsider the appointment of a lead plaintiff during the course of a securities class action because it is the Court's continuing duty to ensure the lead plaintiff is competent to represent the class. *In re NYSE Specialist Sec. Litig.*, 240 F.R.D. 128, 132-33 (S.D.N.Y. 2007); *In re Terayon Commc'ns Sys., Inc. Sec. Litig.,* 2004 WL 413277, at *7 (holding courts have a "duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members"). This Court, then, would still be able to consider plaintiff's proposed substitution even if defendants had not objected; indeed, the PSLRA's lead plaintiff provisions appear to require court intervention when lead plaintiffs are replaced. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

recommenced and, if such a procedure is not required, whether Norfolk satisfies the lead plaintiff requirements set forth by the PSLRA.

While the PSLRA creates standards for appointing a lead plaintiff, the statute is silent regarding what procedures are necessary to replace a lead plaintiff when circumstances have rendered a party unable to serve in that role.  In several cases, courts faced with the withdrawal of a lead plaintiff provided notice to potential class members and allowed 60 days for new putative class members to file motions to serve as a substitute lead plaintiff.[3]  *See, e.g.*, Order on Pending Motions, *In re HealthSouth Sec. Litig.*, CV-03-BE-1500-S (N.D. Ala. Dec. 1, 2004) (holding a lead plaintiff's withdrawal "necessitates the re-opening of the process for the appointment of lead plaintiff"); *In re Neopharm, Inc. Sec. Litig.*, No. 02-2976, 2004 WL 742084, at *2-3 (N.D. Ill. Apr. 7, 2004) (finding the procedure for appointing a new plaintiff must be renewed when the suggested replacement did not originally file a timely motion to serve as lead plaintiff as required by the PSLRA).  However, other courts have held that "where a new lead plaintiff is willing to step forward, there is no need to start the process anew when all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by means of the statutorily required published notice."  *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 120 n.5.; *see also In re Impax Labs., Inc. Sec. Litig.*, No. 04-4802, 2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) (granting leave to substitute a new lead plaintiff when the former lead plaintiff was found to lack standing).  Moreover, in circumstances somewhat analogous to the dual class representatives present

_____

[3] This action is akin to re-opening the PSLRA appointment process, in which the plaintiff who files the action publishes a notice to the members of the putative class informing them of their right to move for appointment as lead plaintiff within 60 days.  The court must then consider the motions for lead plaintiff within 90 days of publication of the initial notice.

here, if more than one party was appointed lead plaintiff courts have allowed the remaining lead plaintiff to continue in that capacity even if the other party withdraws. *See, e.g., In re Bank One Sec. Litig.,* No. 00-0767, 2002 WL 989454, at *3 (N.D. Ill. May 9, 2002) (allowing one lead plaintiff to maintain lead plaintiff status after the other lead plaintiff withdrew); *In re Ins. Mgmt. Solutions Group, Inc., Sec. Litig.,* 206 F.R.D. 514, 515 (M.D. Fla. 2002) (same).

Regardless of whether there is a full re-opening of the appointment process, the statutory guidelines governing the initial appointment of a lead plaintiff must be satisfied by any substitute lead plaintiff. *See In re Initial Pub. Offering Sec. Litig*., 214 F.R.D. at 120 (applying the PSLRA guidelines to govern the replacement of a lead plaintiff). The PSLRA requires a presumptive lead plaintiff: (1) timely move for appointment; (2) possess the "largest financial interest in the relief sought by the class"; and (3) satisfy the class representative requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). A party meeting these criteria will be appointed lead plaintiff unless another member of the class can show the party "will not fairly and adequately protect the interests of the class" or the party is inadequate because it is "subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (asserting courts must consider only these statutory criteria and not "whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff").

Given Norfolk's longstanding involvement in this case and its status as the sole remaining class representative, this Court finds it unnecessary to re-open the process for appointment of a new lead plaintiff. Norfolk claims the second highest financial loss of any plaintiff, making it next in line to serve as lead plaintiff under the PSLRA's criteria. *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 120 ("It only stands to reason that the appropriate [substitute] lead plaintiff would be

the next 'most adequate' plaintiff in accordance with the [PLSRA] criteria."). Norfolk was a timely applicant for lead plaintiff status, and it has remained closely involved in the litigation throughout the class certification stage. It was the only party besides Galleon to seek–and gain–appointment as a class representative. During the class certification process, this Court determined Norfolk met the Rule 23 requirements when it named Norfolk a class representative. *In re Herley Indus. Sec. Litig.*, No. 06-2596, 2009 WL 3169888, at *11-15 (E.D. Pa. Sept. 30, 2009). Defendants give the Court no adequate reason to revisit this decision. Therefore, in the absence of Galleon, Norfolk is the presumptive lead plaintiff.

To deny Norfolk lead plaintiff status, then, this Court would have to find Norfolk is incapable of fairly and adequately protecting the class or is subject to unique defenses. Again, these issues were addressed at the class certification stage, when the Court conducted a Rule 23 analysis. Rule 23(a) requires a class representative be deemed "adequate" to represent the class, meaning class counsel is qualified and there is an absence of conflicts between the representative and the class. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 312 (3d Cir. 1998). By appointing Norfolk as a class representative, this Court held Norfolk met Rule 23's adequacy standard. Similarly, the issue of whether Norfolk was subject to unique defenses was addressed when this Court determined whether Norfolk satisfied the typicality requirement of Rule 23. A class representative is not "typical" if it is "subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). Defendants did not challenge Norfolk's adequacy and typicality when they had the opportunity, and they have not

shown this Court erred when it decided Norfolk satisfied the Rule 23 criteria.[4]

This Court's decision recognizes determining which party is best able to serve as lead plaintiff is necessarily affected by the fact Norfolk has been involved with this litigation since its inception in 2006. This Court has an obligation to appoint a lead plaintiff who both satisfies the PSLRA requirements and will do a fair and adequate job of representing the class as a whole. *In re Cendant Corp. Litig.*, 264 F.3d at 268. It would be impossible, at this point, to find another lead plaintiff who is as well-acquainted with the facts and parties in this case. Furthermore, Norfolk is a uniquely appropriate lead plaintiff because Defendants suffer no prejudice from Norfolk's elevation to the role. Other than Galleon, Norfolk was the only party for which Defendants

---

[4] Defendants now allege Norfolk, which is presently involved in six other securities class actions, is barred from serving as a lead plaintiff by the PSLRA's restriction on "professional plaintiffs." *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi). Under that provision,

> [e]xcept as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

*Id.* Because this is a discretionary bar, it does not prevent the appointment of Norfolk in this case. To the extent this bar would otherwise apply, however, the Court finds circumstances warrant a waiver because Norfolk is uniquely positioned to serve as lead plaintiff.

Moreover, applying this provision harshly against institutional investors would run counter to the purposes of the PSLRA. In drafting the PSLRA, Congress sought to encourage greater involvement of institutional investors in securities class actions. *In re Herley Indus. Sec. Litig.*, 2009 WL 3169888, at *10 (stating the PSLRA's lead plaintiff provisions were "meant to increase the role of institutional investors, who could then exert tighter control over class counsel and who have the greatest incentive to secure a large recovery for the class") (citations and quotation marks omitted); *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) ("The [Conference Committee] Report made it quite clear that the limitation against professional plaintiffs was not designed to be applied mechanically to institutional investors."). Recognizing the disconnect between the PSLRA's purpose and the professional plaintiff provisions, "the majority of courts applying the professional plaintiff restriction have concluded that the restriction does not apply to institutional investors." *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003). Thus, this provision does not bar Norfolk's ability to serve as lead plaintiff in this matter.

conducted discovery, including interrogatories, document requests, and a deposition. Defendants had a full and fair opportunity to challenge Norfolk's role in this litigation at the class certification stage, but failed to demonstrate Norfolk's inability to represent the class.

Finally, allowing Kirby and Labaton to serve a co-lead counsel furthers the best interest of the class. Norfolk, as the newly appointed lead plaintiff in this matter, has the power to "select and retain" lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d at 273. Unless a lead plaintiff's selection of counsel would fail to protect the interest of the class, a court should not interfere with the selection process. *Janovici v. DVI*, No. 03-4795, 2003 WL 22849604, at *14 (E.D. Pa. Nov. 25, 2003). Far from failing to protecting class-wide interests, the solution proposed by Norfolk is the optimal method for protecting the plaintiff class. Both firms have vast experience litigating securities class actions. Kirby has the greatest knowledge of the facts and procedural history of this case, and Labaton has a longstanding relationship with new lead plaintiff Norfolk. Therefore, cooperation between Galleon's former counsel and Norfolk's counsel will best serve the needs of the class.

For the foregoing reasons, Galleon shall be allowed to withdraw as lead plaintiff and class representative, Norfolk shall be appointed lead plaintiff, and Kirby and Labaton shall jointly serve as co-lead counsel**.** Plaintiffs are instructed to move to amend their Amended Consolidated Complaint within 30 days in accordance with this opinion.

An appropriate order follows.